**UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC, Plaintiff–Appellee,**

v.

**USX CORPORATION, Defendant–Appellant.**

No. 90–7313.

United States Court of Appeals, Eleventh Circuit.

July 24, 1992.

Michael L. Lucas, Burr & Forman, Birmingham, Ala., S.G. Clark, Law Dept., USX Corp., Pittsburgh, Pa., for defendant-appellant.

Jerome A. Cooper, Joe R. Whatley, Jr., Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, Ala., Carl B. Frankel, Rudolph L. Milasich, Jr., Legal Dept., United Steelworkers, Pittsburgh, Pa., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge, and PECK *, Senior Circuit Judge.

TJOFLAT, Chief Judge:

This appeal is from an injunctive order enforcing an arbitration award entered under a collective bargaining agreement. The award, and therefore the injunction, directs the employer to comply with the provision of the collective bargaining agreement that requires the employer to notify the union before contracting out work to be performed in the employer's shop. We vacate the injunction because the award it enforces is not "drawn from the essence" of the labor contract as required by law, see *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), and, alternatively, because an adequate remedy exists at law.

I.

The employer in this case, USX Corporation (USX or the Company), is a manufacturer of steel products. The union, United Steelworkers of America (the Union), is a labor organization that represents employees in the steel industry. On February 1, 1987, USX and the Union entered into a collective bargaining agreement (the labor agreement or the agreement) that governs USX's employment of production and maintenance workers at the Company's steel-manufacturing and by-product coke facilities.[1]

The labor agreement requires USX to employ the Union's members in the performance of the Company's production and maintenance work at these facilities; this ban does not apply, however, to maintenance work that, prior to March 1, 1983, USX had, as a "consistent practice," contracted out.[2] When USX decides to let a contract for the performance of work at a covered facility, the Company must provide the Union with notice of the work unless an emergency situation exists, in which case the Company is exempt from providing prior notice.[3] The purpose of the notice is to give the Union an opportunity to determine whether the noticed contract is for production and maintenance work that the Un-

---

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. The collective bargaining agreement defines "employees" as

    all individuals occupying production [and] maintenance ... jobs employed in and about the Company's steel-manufacturing and by-product coke plants for which units the Union is, or may be during the life of this Agreement, certified by the National Labor Relations Board as the exclusive collective-bargaining representative.

2. Under the labor agreement, the production and maintenance work does not include the following: (1) production and maintenance work contracted out with the Union's consent; (2) major construction projects; and (3) the acquisition of "parts and supplies."

3. Paragraph E of section 2–C of the labor agreement provides in pertinent part:
    E. Notice and Information
    Before the Company finally decides to contract out an item of work, the Union ... will be notified.... [S]uch notice will be given in sufficient time to permit the Union to invoke

ion's members should perform. If the Union concludes that the proposed contract calls for such work, it may object and, if the matter is not resolved to its satisfaction, file a grievance and invoke the agreement's expedited grievance procedure.[4] Under that procedure, if the parties cannot settle the dispute within five days, either side may demand arbitration.

To compensate Union members for wages lost when USX contracts out production and maintenance work (that presumably should be performed by Union members) without notifying the Union, the labor agreement authorizes the arbitrator[5] to fashion any remedy "appropriate to the circumstances of the particular case ... includ[ing the award of] earnings and benefits to the grievants who would have performed the work ...."[6] The sums USX might have to pay if it breaches its duty to notify could be substantial. First, USX must pay the contractor hired to do the work. Second, it may have to pay Union employees the wages they would have earned if permitted to do the work. Third, it may have to pay the expenses incurred by the Union in prosecuting its members' grievances. Finally, the arbitrator has discretionary authority to impose additional sanctions "appropriate to the circumstances of the particular case"; we need not speculate, however, as to what such additional sanctions might be.

## A.

The incident leading to the arbitration award the district court enforced in this

---

the Expedited Procedure described in paragraph G below [*see infra* note 4], *unless emergency situations do not permit it.* Such notice shall be in writing and shall be sufficient to advise the Union ... of the location, type, scope, duration and timetable of the work to be performed so that the Union ... can adequately form an opinion as to the reasons for such contracting out.

(Emphasis added.)

**4.** Paragraph G of section 2–C of the labor agreement provides in pertinent part:

G. Expedited Procedure

In the event that either the Union or Company ... request[s] an expedited resolution of a grievance arising under this section ..., it shall be submitted to the Expedited Procedure in accordance with the following:

1. In all cases except those involving day-to-day maintenance and repair work and service, or emergencies, the Expedited Procedure shall be implemented prior to letting a binding contract.

2. Unless the parties agree otherwise, within five (5) days (excluding Saturdays, Sundays and Holidays) after the filing of a grievance, if either the Union or Company determines that the grievance cannot be resolved, either party ... may advise the other party in writing that it is invoking arbitration under this Expedited Procedure and shall notify the Board [of Arbitration]. The party invoking arbitration shall include with its written notice a summary of the facts and arguments relied upon. Within five (5) days (excluding Saturdays, Sundays and Holidays) following receipt of such notice the responding party shall provide the moving party

with a written summary of the facts and arguments that it relies upon.

3. An expedited arbitration must be scheduled within five (5) days (excluding Saturdays, Sundays and Holidays) of such notice to the Board [of Arbitration] and heard at a hearing commencing within ten (10) days (excluding Saturdays, Sundays and Holidays) thereafter. The Board, or its appointee, shall hear the dispute.

4. The Board must render a decision within five (5) days (excluding Saturdays, Sundays and Holidays) of the conclusion of the hearing, which decision need only succinctly explain the basis for the findings.

**5.** The arbitrator is the Board of Arbitration. We sometimes use the term arbitrator in referring to the Board, its chairperson, or members.

**6.** The "Notice" provision contained in paragraph E of section 2–C of the labor agreement provides, in pertinent part:

Should it be found in the arbitration of a grievance alleging a failure of the Company to provide the notice ... required under this paragraph ... that such notice ... was not provided, that the failure was not due to an emergency requirement, and that such failure deprived the Union of a reasonable opportunity to suggest and discuss practical alternatives to contracting out, *the Board [of Arbitration] shall have the authority to fashion a remedy, at its discretion, that it deems appropriate to the circumstances of the particular case. Such remedy, if afforded, may include earnings and benefits to the grievants who would have performed the work, if they can be reasonably identified.*

(Emphasis added.)

case began in early September 1988, at USX's Fairfield Works, located in Birmingham, Alabama. A blast furnace—which recently had been the subject of a major rebuilding project—malfunctioned, causing "gummy slag," a molten debris that is a byproduct of the smelting process, to run out of the furnace. Because this gummy slag threatened to "freeze up" the furnace, workers were needed immediately to repair and clean-up the furnace and its "runners," i.e., channels through which molten debris travels.

On September 11, USX, without notifying the Union, directed a contractor to perform the needed repair and clean-up work. By September 17, the furnace was fully operational; a number of the contractor's workers remained on the site after this date, however, performing clean-up work. The Union, on September 21, filed three grievances challenging the use of outside labor on the repair and clean-up work. The Union interpreted the Company's use of outside workers as a violation of the agreement's ban on contracting out production and maintenance work. When the parties failed to resolve the grievances, USX invoked arbitration.

On January 25, 1989, an arbitrator convened a hearing.[7] The Union, to demonstrate that the contracted-out work constituted production and maintenance work for which notice should have been given, pro-

duced evidence that, in the past, similar spills had been cleaned up by Union laborers. USX, characterizing most of the disputed repair work as part of the rebuilding of the blast furnace, as opposed to production and maintenance work, defended its use of outside labor as permissible under the agreement.[8] USX also cited the emergency nature of the gummy slag runout as exempting the Company from the notice requirement.[9]

On February 7, 1989, the arbitrator sustained the Union's grievances and issued an award. In his opinion accompanying the award,[10] the arbitrator found that although an emergency excused USX from notifying the Union when the runout began, the emergency soon abated and USX should have notified the Union of the work it planned to contract out. The arbitrator had insufficient evidence, however, to determine whether any Union members should be compensated for lost wages; accordingly, he left the issue with the parties, granting them leave to return to arbitration if they could not reach a settlement.[11] (The parties subsequently agreed upon an appropriate remedy.) The arbitrator imposed no fine, nor did he give the Union the expenses it incurred in prosecuting its grievance. Apparently, USX's conduct did not warrant such relief. He did, however, order USX "to hereafter provide notice of

7. USX and the Union have developed their own rules of procedure for arbitration of disputes. All Board decisions are subject to approval by the Board's Chairman. The Chairman conducted the January 25, 1989, hearing mentioned in the text.

8. USX treated the work as a "major construction project," which could be contracted out. *See supra* note 2.

9. *See supra* note 3.

10. The arbitration award contains three sections entitled "Background," "Findings," and "Award." The "Award" section, sets forth the relief granted. The "Background" section contains a brief description of the facts of the dispute. The "Findings" section contains the arbitrator's interpretation of the labor agreement as it applies to the facts of the case. To avoid confusion between the "arbitration award" as a whole and

the "Award" section, we refer to the former as the opinion of the arbitrator and to the latter as the award.

11. Although the arbitrator did not explicitly state that he would determine the damages figure if the parties could not, he implied as much in his stated reason for sending the issue back to the parties: he did not think that enough evidence had been presented to allow him to assess a damages figure. As he explained in his opinion:

There remains the matter of whether a monetary remedy is appropriate in this case. The evidence seems clear that all available employees were fully employed at the time and working some overtime. Although some overtime figures were submitted in evidence they were not complete. Thus, the matter of remedy will be returned to the Parties to review the availability of employees to have

contracting out as required by Section 2–C" of the labor agreement.

### B.

The Union contends that USX has ignored the arbitrator's admonition to comply with section 2–C of the labor agreement and has been contracting out work that should be performed in the plant by Union members. To stop this practice, the Union brought this suit in the United States District Court for the Northern District of Alabama; invoking section 301 of the Labor–Management Relations Act of 1947, 29 U.S.C. § 185 (1988) (the LMRA),[12] the Union asked the district court to enforce the arbitrator's award—that is, to enjoin USX, in the words of the arbitrator, "to hereafter provide notice of contracting-out as required by Section 2–C" of the labor agreement. The Union also sought money damages for the wages its members would have earned had they been permitted to perform certain contracted out work occurring after the arbitration award. USX answered the Union's complaint, denying the Union's allegations and contesting its right to any relief. Thereafter, both parties moved for summary judgment.

In support of its motion, the Union argued that it was entitled to an injunction as a matter of law because USX had demonstrated an unwillingness to abide by section 2–C of the labor agreement; the Union's motion did not address its damages claim. USX, in turn, argued on several grounds that the court should deny the injunction and dismiss the case. First, the Union had met none of the traditional prerequisites for injunctive relief: for example, the Union failed to show that its legal remedy was inadequate, or that it needed an injunction to avoid irreparable harm. Second, the Union had not satisfied the other requirements for an injunction laid down by the Norris–LaGuardia Act, ch. 90, § 7, 47 Stat. 71, 29 U.S.C. § 107 (1988). Lastly, USX argued that the granting of an injunction or money damages would in effect eliminate arbitration as the mechanism chosen by the parties to resolve contracting-out disputes and thus would rewrite their labor agreement.

On March 15, 1990, the district court entered an order granting the Union's motion for summary judgment and the injunctive relief it had requested, denied USX's motion in which it had asked that the complaint be dismissed, and taxed costs against USX. The court found, from the affidavits and other exhibits submitted by the parties, that USX had been disregarding the arbitrator's order to give the Union notice of contracting out in accordance with section 2–C of the labor agreement; the court observed that USX had not given notice, as required, "100% of the time."[13] The court

---

performed the work assigned to the contractor.

12. Section 301 of the LMRA, 29 U.S.C. § 185 provides, in relevant parts:

(a) Venue, amount, and citizenship

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

....

(c) Jurisdiction

For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

....

The complaint also alleged jurisdiction under 28 U.S.C. § 1331 (1988), which provides district courts of the United States with original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States[,]" and 28 U.S.C. § 1337(a) (1988), which provides district courts of the United States with original jurisdiction over civil actions or proceedings "arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

13. In the opinion accompanying its order granting the Union injunctive relief, the district court cited *Oil, Chemical & Atomic Workers International Union v. Ethyl Corp.*, 644 F.2d 1044 (5th Cir.1981), as supporting the action the court took. In our view, *Ethyl Corp.* is inapposite. The court, there, assumed that the arbitrator's award was legal; here, as we explain in subpart II.A., the arbitrator's award is invalid. Similar-

thus rejected the Company's argument that arbitration provided the Union and its members adequate relief and that an injunction was not needed to protect their rights under the agreement. As for USX's argument that the Union had not satisfied the requirements of the Norris–LaGuardia Act, the court, citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), held that these requirements were of no moment; the Act simply did not apply in the circumstances at hand.

After the March 15 order was entered, USX moved the court, pursuant to Fed. R.Civ.P. 59(e),[14] to alter, amend, or vacate the March 15 order, or, in the alternative, to modify certain language in the order. On April 3, 1990, the court granted USX the alternative relief it requested, and modified its injunctive order to read as follows:

> Before it finally decides to contract out an item of work at the Fairfield Works, USX will provide notice of such intention to the Union.... *Unless the item of work ... involves day-to-day maintenance and repair work and service,* such notice will be given not less than 25 days before the work is to be done, unless emergency situations do not permit it. Such notice shall be in writing and shall be sufficient to advise the Union ... of the location, type, scope, duration and timetable of the work to be performed so that the Union ... can adequately form an opinion as to the reasons for such contracting out. Such notice shall generally contain the information set forth below:
> 1. Location of work
> 2. Type of work:
>    a. Service
>    b. Maintenance
>    c. Major Rebuilds

> d. New Construction
> 3. Detailed description of the work
> 4. Crafts or occupations involved
> 5. Estimated duration of work
> 6. Anticipated utilization of bargaining unit forces during the period
> 7. Effect on operations if work not completed in timely fashion.

(Emphasis added.)[15]

### C.

The appeal now before us is from the district court's order of April 3, 1990, amending its injunctive order of March 15, 1990.[16] The parties, in their briefs, state that we have jurisdiction pursuant to 28 U.S.C. § 1291 (1988), to review a "final decision" of the district court.[17] As noted, the Union moved for, and the court granted relief on, only the Union's claim for injunctive relief, while USX's summary judgment motion, which addressed both the injunction and damages claims, was denied. Furthermore, while the court taxed costs against USX, no entry of judgment appears in the record. The record reveals no other disposition of the Union's damages claim, suggesting that a "final decision" may not have been reached in the court below.

It is possible that the Union abandoned the damages claim. If so, the court's March 15 order, as amended, "clearly evidences its intent that the ... order represent[s] the final decision in the case" necessary for jurisdiction under section 1291. *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 387, 98 S.Ct. 1117, 1121, 55 L.Ed.2d 357 (1978). Alternatively, the parties may have left the matter of damages for a later day. If such is the case, the court granted a preliminary injunction reviewable under 28

---

ly, the court in *Ethyl Corp.* assumed that the union had no adequate remedy at law; here, as we explain in subpart II.B., the remedy at law is adequate.

**14.** Fed.R.Civ.P. 59(e) states that "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment."

**15.** The April 3 order simply added the emphasized text.

**16.** In its notice of appeal, USX states that it is appealing from both the order of March 15, 1990, and the order of April 3, 1990.

**17.** 28 U.S.C. § 1291 (1988) provides:
The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ..., except where direct review may be had in the Supreme Court.

U.S.C. § 1292(a)(1) (1988),[18] and subject to less stringent procedural hurdles than those for a permanent injunction reviewable under section 1291. *See* 11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 2941, at 361 (1973).

Since jurisdiction exists under either section 1291 or 1292, and since our resolution of the merits in part II, *infra,* makes any differences in review irrelevant, it is not necessary to address whether a final decision was reached.

## II.

As noted, after finding for the Union on its grievances, the arbitrator, in his award, ordered the Union "to hereafter provide notice of contracting out as required by Section 2–C" of the labor agreement.[19] In enforcing this aspect of the award, the district court, in effect, gave the Union the option of substituting the federal courtroom for the arbitrator's hearing room as the forum for resolving contracting-out disputes. The labor agreement, however, does not give the Union this option; rather, the agreement forecloses federal forums by mandating the arbitration of *all* contracting-out disputes. We conclude, in subpart A, that even if the arbitrator intended that his award rewrite the parties' agreement in this fashion, the award is illegal and unenforceable, for it has not been

"drawn from the essence" of the labor agreement. *See Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361. Accordingly, the district court's injunction cannot stand.

The court's injunction must be set aside for another, independent reason as well. As we explain in subpart B, the prerequisites for injunctive relief are not present in this case; indeed, the principles of equity preclude such relief.[20]

## A.

■ That the district court's injunction will effectively abolish arbitration as the mechanism for resolving future contracting-out disputes becomes clear when one considers what will transpire the next time the Union claims that the Company has let a contract for production and maintenance work without notice, in violation of section 2–C. Posit a situation in which, as here, USX hires a contractor to do clean-up work after a blast furnace malfunctions. USX believes that an emergency exists and therefore does not immediately notify the Union that it has let the contract.[21] In time, the Union discovers the contractor's employees on the job, or receives notice thereof, and, believing that USX has violated the district court's injunction, moves the court to issue an order requiring the Company to show cause why it should not be

---

**18.** 28 U.S.C. § 1292(a)(1) (1988) creates jurisdiction from:

> Interlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions....

**19.** As noted in the text *supra,* p. 1395, the labor agreement covers only specific types of work. The district court's injunction, however, if taken literally, expands the labor agreement's coverage to include *any* "item of work at the Fairfield Works." We assume that the court did not intend to reach such additional work and that, if called upon to enforce its injunction, would restrict the injunction to conform with the agreement.

The injunction, while tracking for the most part the language of section 2–C, made one significant change. The labor agreement requires the Company to notify the Union of contracting-out "in sufficient time to permit the Union to invoke the Expedited [Grievance] Procedure, unless emergency situations do not per-

mit it." The injunction, however, requires that such notice be given "not less than 25 days before the work is to be done." Given our disposition of the case, we do not consider the propriety of this change.

**20.** On appeal, USX contends that the district court disregarded section 7 of the Norris–La-Guardia Act, 47 Stat. 71, 29 U.S.C. § 107 (1988) by, among other things, entering the injunction on summary judgment. Given the grounds on which we dispose of this appeal, we find it unnecessary to consider whether the Norris–LaGuardia Act barred the entry of the injunction on summary judgment and, if not, whether the presence of genuine issues of material fact did so.

**21.** As noted, under the district court's injunctive order, as in section 2–C of the labor agreement, USX need not give the Union advance notice when "emergency situations do not permit it." *See supra* note 3.

held in contempt and sanctioned.[22] The Union's motion, the allegations of which the court accepts as true, demonstrates a violation of the injunction; hence, the court issues a show cause order and sets a hearing.

At the hearing, the Union's evidence establishes that USX let a contract for production and maintenance work without notifying the Union as required by the labor agreement, and the court, rejecting USX's argument that the situation constituted an emergency requiring no notice, holds the Company in contempt. At this point, what sanction could the court impose? What remedy could the court fashion to make the Union and its members whole?

If, on the one hand, the contracted-out work is not finished, the court could, at least in theory, require USX to give the balance of the work to the Union's members.[23] At the same time, the court could order USX to compensate the Union members who could have done the work already performed for any wages they may have lost. On the other hand, if the work has been finished, or circumstances otherwise preclude the substitution of Union members for the contractor's employees at the job site, the court could require the Company to make whole any Union members who were deprived of the opportunity to do the clean-up work in violation of the agreement.[24] Could the court require the Company to compensate the Union for the attorneys' fees it has incurred in prosecuting the civil contempt proceeding, or, if the law foreclosed such relief, could the court fine USX and direct it to pay the fine to the Union?

An award of attorneys' fees would be highly problematical. The labor agreement makes no provision for the granting of such fees in judicial proceedings to enforce arbitration awards, and we know of no statutorily or judicially created authority that would authorize the court to grant them.[25] To be sure, an arbitrator, if he believes that an award of attorneys' fees would be "appropriate to the circumstances of the case," [26] may require the Company to reimburse the Union for such expenses; the parties, however, in drafting their agreement, gave this authority to the arbitrator, not to the court.

As for a fine, the court could impose a fine and order it paid to the Union; the court could not do so, however, if the purpose of the fine is to punish USX for violating the injunction.[27] A fine levied to punish a contemnor is a criminal, not a civil, contempt sanction, and, in our hypothetical case, USX has not been charged with criminal contempt. Could the court fine USX as a means of coercing its future compliance with the injunction? Arguably, the court could, but it would be a close question

---

**22.** The Union takes this action because a civil contempt proceeding is the only lawful means available for enforcing an injunction. *See Mercer v. Mitchell,* 908 F.2d 763, 769 n.10, 770–71 (11th Cir.1990); *Blalock v. United States,* 844 F.2d 1546, 1558–60 (11th Cir.1988) (Tjoflat, J., specially concurring).

**23.** Due process, however, would probably require that the court first make the contractor a party to the proceedings and accord it an opportunity to be heard.

**24.** *See, e.g., Local 28 of Sheet Metal Workers v. EEOC,* 478 U.S. 421, 443, 106 S.Ct. 3019, 3033, 92 L.Ed.2d 344 (1986).

**25.** The " 'American Rule' prohibits fee-shifting in most cases," *Chambers v. Nasco, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991); thus, the Union could not recover its attorneys' fees merely because it prevailed at the civil contempt hearing. There are, however, "narrowly defined circumstances" in which federal courts, in the exercise of their inherent power, can assess fees against counsel or the parties they represent. *Id.* For example, a district court "may assess attorneys' fees for the 'willful disobedience of a court order,' " *id.* (quoting *Alyeska Pipeline Serv. Co. v. The Wilderness Soc'y,* 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975)), or "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Id.* (quoting *Alyeska,* 421 U.S. at 258–59, 95 S.Ct. at 1622–23). Thus, the Union probably could recover its attorneys' fees if it established that USX's conduct—in failing to give notice of contracting out—fell within these exceptions.

**26.** *See supra* note 6.

**27.** *See Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 441–42, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911) (when purpose of sanction is punishment, contempt is *criminal* contempt).

whether, in truth, the purpose of the fine is, instead, to punish USX for its past transgression.

It therefore appears that, in the circumstances we posit, the district court, depending on the status of the contracted-out work, might not be able to make the Union and its members as whole as could an arbitrator—because, as we have observed, *supra* at 1395–98, the discretion the parties have given the arbitrator to fashion an award is much broader than the discretion the law gives the district court to fashion a civil contempt sanction. The question thus arises: could the court, after concluding that USX violated section 2–C's notice provision and holding it in contempt, "remand" the case to an arbitrator [28] and instruct the arbitrator, drawing on his authority under the labor agreement, to consider the remedies that might be "appropriate to the circumstances of the particular case" and to fashion whatever remedies he deemed appropriate? In theory, the court could do so; [29] but we know of no legal precedent for such a remand.

Assume, nonetheless, that the law would permit the court to remand the task of fashioning a remedy to an arbitrator. Would the arbitrator be bound by the court's conclusion that USX had contracted out production and maintenance work without the requisite notice to the Union? That would depend on the court's instructions to the arbitrator. If the court bound the arbitrator to its conclusion that USX had violated section 2–C's notice provision, would the

arbitrator still have discretion to deny the Union and its members relief on the ground that, in the arbitrator's view, the "circumstances of the particular case" warranted no relief?

For example, suppose the arbitrator, after hearing the evidence adduced by the parties on the remedy issues—in particular, evidence the district court had not considered—concluded that the district court had erred; the contracted-out work was not production and maintenance work after all, or, if it was, an emergency excused USX from giving notice. In such a case, the arbitrator would reject the Union's grievance and make no award. The Union, in turn, would have nothing to enforce in the district court. True, the Union could bring suit, but the district court would be powerless to substitute its judgment for that of the arbitrator and grant relief. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987).

We do not know, of course, what path the district court will follow if, at some future date, the Union seeks a show cause order, the order issues, and, following a hearing, the court holds USX in contempt for violating the injunction. Presumably, the court (1) could decide all of the issues, leaving nothing for resolution by arbitration as provided in the labor agreement, or (2) could decide the question of whether USX violated the injunction and, if the Union prevailed, direct the parties to submit the matter of remedy to arbitration. If the

**28.** The court, acting on a motion to refer the case to arbitration, could place the case in the hands of an arbitrator by compelling the parties to arbitrate, as provided in their labor agreement, the matter of remedies.

**29.** We say that the district court could, in theory, take such action because it has the power to compel arbitration at the behest of either party at any stage of a proceeding. *See generally, Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). In the situation we posit, however, the court might have a difficult time reconciling its earlier holding (when it issued the injunction)—that arbitration provided the Union no adequate remedy at law—with its instant holding (following the civil contempt proceeding)—that arbitration did provide the

Union an adequate remedy at law, a better remedy, in fact, than any remedy, whether legal or equitable, the court could possibly fashion. The district court might also have a difficult time explaining why the arbitrator should be bound by the court's determination that USX violated section 2–C by not giving the Union notice of the contracting-out. Given the arbitrator's expertise in interpreting the parties' labor agreement in the light of the conditions of the workplace, and the broad license the parties have granted him to fashion appropriate remedies, an expertise and license the district court does not enjoy, one could argue that no explanation the court could give for binding the arbitrator to the court's decision on the notice issue could pass muster on appellate review.

court chose the latter course, it would have to decide whether, on the one hand, to bind the arbitrator to its conclusion that USX failed to give notice as required by section 2–C or, on the other hand, to permit the arbitrator to exercise in full the authority conferred on him by the labor agreement, meaning that the arbitrator could reject the court's conclusion that USX had violated section 2–C. If the court permitted the arbitrator to exercise in full the authority conferred on him by the labor agreement, the injunction served no purpose; for when called to enforce it, the court simply transferred the controversy to the arbitrator for decision. In this scenario, then, the court is a mere conduit—an expensive, unneeded conduit.

Neither of these courses of action has any support in the law; consequently, the court's injunction cannot stand. Consider the first alternative. The court, following the show cause hearing, decides *all* of the issues; it holds USX in contempt, concluding that it should have notified the Union before letting the contract for the clean-up work, and fashions the remedy, leaving nothing for arbitration. In this scenario, the court arrogates entirely unto itself the role the parties gave the arbitrator when they drafted their labor agreement; thus, the court in effect rewrites the parties' labor agreement. Admittedly, the court has not explicitly stricken the arbitration provision from the agreement; that provision remains extant as a dispute resolution mechanism. What the court has done, however, is give the Union the option of going to arbitration or going to court. The court's stated reason for giving the Union these options is that it is dutifully enforcing an arbitration award.

Federal courts routinely enforce with injunctive orders arbitration awards in labor cases. *See, e.g., Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361. They do so, however, only if the award

draws its essence from the labor agreement. *United Paperworkers Int'l Union*, 484 U.S. at 38, 108 S.Ct. at 371. As the Supreme Court has cautioned, the

> arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.... [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's works manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361. Accordingly, we will not enforce an award that "directly contradicts the express language of the collective bargaining agreement." *Bruno's, Inc. v. United Food & Commercial Workers Int'l Union*, 858 F.2d 1529, 1531 (11th Cir.1988). In the case at hand, the express language of the labor agreement gives both parties the right to demand, and to obtain, the arbitration of contracting-out disputes. The arbitrator's award, however, as interpreted, and enforced, by the district court, gives the Union the right to ignore the Company's demand for arbitration and to sue for injunctive relief; thus, the award "directly contradicts" that express language.[30] If this is how the arbitrator intended his award to be read, it is obvious that he did not draw the award from the essence of the contract.

The second, alternative course of action available to the court—in which it decides the notice issue and sends the remedy issues to the arbitrator—fails for the same reason: the court enforces an arbitrator's award that has effectively rewritten, and contradicted, the labor agreement.

**B.**

■ The district court entered the injunction in this case without giving due

---

**30.** The arbitrator's award does not explicitly give the Union the right to ignore the Company's demand for arbitration. Rather, the award simply admonishes USX to comply with section 2–C of the labor agreement; nothing in the language of the award, or the opinion accompa-

nying it, indicates that the arbitrator contemplated judicial enforcement of the award through the federal court's civil contempt power. The district court, however, in entering the injunction at issue, necessarily concluded that the arbitrator intended such enforcement.

deference to the traditional prerequisites for such relief.[31] The principal prerequisite for injunctive relief is the absence of an adequate legal remedy. In most cases, the applicant establishes this prerequisite by showing that it "will suffer irreparable harm if the court does not intervene...." 11 Wright & Miller, *supra*, § 2944, at 399; *see also supra* note 31; *Kowalski v. Chicago Tribune Co.*, 854 F.2d 168, 171 (7th Cir.1988). Here, the Union made no such showing since an adequate remedy exists at law.[32]

Arbitration takes much less time than litigation, and it is considerably less expensive.[33] Under section 2–C of the parties' labor agreement, if a controversy does not settle within five days of the filing of a grievance, either party can demand arbitration; once arbitration is invoked, the other side has five days to respond—with "a written summary of the facts and arguments that it relies upon." Within the same five-day period, an arbitration hearing, to commence within ten days, must be scheduled. Then, after the hearing is concluded, the arbitrator has five days to decide the case. Arbitration under section 2–C was designed to take no more than twenty days—from the demand for arbitration to the arbitration decision.[34]

A federal district court could not be expected to dispose of a contracting-out dispute in anywhere near the time the parties have allotted for arbitration. Posit, for example, a situation in which the Union discovers that USX has let a contract for production and maintenance work. The contractor is already on the job site, and the Union, believing that USX has breached the labor agreement, wants to stop the work. The labor agreement contains no arbitration provision, however, so the Union has to take its breach of contract claim to court. The Union sues and asks the district court for preliminary and permanent injunctive relief (and for damages—the wages its members, who could have performed the work, have lost to date). The Union immediately seeks a temporary restraining order (TRO) to halt the work, but a TRO does not issue because, the court concludes, the Union's members will not suffer irreparable injury; damages will make them whole. The Union, having

---

**31.** In *Boys Markets, Inc. v. Retail Clerk's Union*, 398 U.S. 235, 254, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199 (1970), a suit by an employer for injunction in a labor dispute also committed to arbitration by the collective bargaining agreement made with the union, Justice Brennan, writing for the Court, set forth some of the factors a federal district court must consider in deciding whether to enter an injunction in such a case:

> [T]he District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches [of the collective bargaining agreement] are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.

*Id.* (quoting *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 228, 82 S.Ct. 1328, 1346, 8 L.Ed.2d 440 (1962) (Brennan, J., dissenting), *overruled by Boys Markets*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970)). The same considerations should counsel a federal court in deciding whether to grant a union's application for an injunction compelling the employer to arbitrate a dispute the parties' labor agreement commits to arbitration.

**32.** In fact, as the following discussion makes clear, by applying for and obtaining the injunction at issue, the Union has subjected itself, and the Company as well, to great harm—in the form of substantial litigation expenses and considerable delay in the resolution of contracting-out disputes.

**33.** Before they settled on arbitration rather than litigation as the mechanism for resolving contracting-out disputes, the parties presumably performed a cost benefit analysis and concluded that arbitration would be far more efficient and less expensive. Moreover, as the Supreme Court has observed,

> the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed.

*United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).

**34.** *See supra* note 4.

failed to obtain a TRO, now asks for a preliminary injunction. A considerable amount of time passes, because the Union has to obtain service of process on the contractor[35] as well as USX; meanwhile, the work continues unabated. After service of process is effected and due notice is given, *see* Fed.R.Civ.P. 65(a), a hearing on the Union's application for a preliminary injunction is held. The injunction does not issue, however, because the Union fails to establish two of the four prerequisites for a preliminary injunction: (1) "a substantial threat that [the Union] will suffer irreparable injury if the injunction is not granted" and (2) "that the threatened injury to [the Union] outweighs the threatened harm the injunction may do to [USX]." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir.1983) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974)).[36] The Union also fails to obtain a permanent injunction; the contracted-out work is finished and, in any event, the Union has an adequate remedy at law in the form of money damages for the wages its members lost. The Union therefore seeks money damages. Whether the case is tried to the court or to a jury, further delay ensues before the matter is resolved.

In sum, it is clear that the parties' expedited grievance procedure, with its provision for arbitration, provides a far better mechanism for resolving contracting-out disputes than the district court's civil contempt proceeding.[37] Requiring the Union to resort to arbitration instead of civil contempt will certainly cause the Union no irreparable injury; on the contrary, the Union should receive considerable benefit—a greater benefit than it could ever receive from a civil contempt adjudication. As the parties contemplated when they entered into the labor agreement, the Union cannot repair to the courthouse unless, following arbitration and the receipt of an award calling for the payment of money or the performance of a *specific act* by USX, the Company fails to honor the arbitrator's decision. If the Company fails to comply, the Union can sue and enforce the award—by obtaining a money judgment or an injunctive order.[38]

### III.

In conclusion, we set aside the district court's injunctive order because (1) it enforces an arbitration award (if, indeed, it is an arbitration award) that is illegal, and (2) the Union has an adequate remedy at law. The case is REMANDED for proceedings in accordance with this opinion.

IT IS SO ORDERED.

---

**35.** Due process would require the court to bring the contractor to the proceeding before enjoining it from finishing the contracted-out work.

**36.** The other two prerequisites for preliminary injunctive relief are (3) "a substantial likelihood that [the Union] will prevail on the merits" and (4) "that granting the preliminary injunction will not disserve the public interest." *Lambert,* 695 F.2d at 539 (quoting *Canal Auth. v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974)). The later of these prerequisites may also be violated in this case. *See* Norris–LaGuardia Act, 47 Stat. 71, 29 U.S.C. § 108 (1988) (stating public policy favors arbitration of labor disputes).

**37.** The district court chose the civil contempt proceeding as the mechanism for resolving contracting-out disputes when it entered the injunction at issue; the civil contempt proceeding is the only lawful means available for enforcing injunctive orders. *See supra* note 22.

**38.** This discussion, in subpart B, reinforces our conclusion, in subpart A, that the arbitrator's award—which orders USX "to hereafter provide [the Union] notice of contracting out as required by Section 2–C" of the labor agreement—was not drawn from the essence of the labor agreement. In other words, it cannot reasonably be said that the parties, having chosen the most efficient and inexpensive means of resolving contracting-out disputes—arbitration—meant to subject themselves to the financially burdensome and time-consuming means—the civil contempt proceeding—the district court considers the arbitrator to have chosen.