980 F.2d 1424
 142 L.R.R.M. (BNA) 2233, 61 USLW 2515,
124 Lab.Cas. P 10,534
 SULLIVAN, LONG & HAGERTY, INC., a corporation,
Plaintiff-Counterclaim-Defendant-Appellee,
v.
LOCAL 559 LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, a
union, Defendant-Counterclaim-Plaintiff-Appellant.
 No. 92-6365.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 13, 1993.
 
 Joe R. Whatley, Jr., Samuel H. Heldman, Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, Ala., for appellant.
 Sydney F. Frazier, Jr., Birmingham, Ala., for appellee.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before BIRCH, Circuit Judge, JOHNSON, Senior Circuit Judge, and THOMAS*, Senior District Judge.
 BIRCH, Circuit Judge:
 
 
 1
 This case requires us to decide whether the district court exceeded its authority by vacating the decision of a joint management-union committee requiring that an employee be reinstated. Because the decision of the contractually-designated committee was drawn from the essence of the collective bargaining agreement, we REVERSE the decision of the district court vacating the award.
 
 I. BACKGROUND
 
 2
 This suit centers upon a labor dispute between Sullivan, Long & Hagerty, Inc. ("Sullivan") and the Laborers International Union of North America, Local No. 559 ("the Union") that arose during the construction of the Miller Steam Plant, near West Jefferson, Alabama. The collective bargaining agreement that governs the relationship of these parties at the Miller Steam Plant is embodied in two documents--the local Building Construction Agreement ("BCA") and the Project Labor Agreement ("PLA"). The PLA contains a clause directing that its provisions are to prevail in the event of conflict with the terms of another labor contract and incorporating those provisions of local labor contracts that do not conflict with the PLA.
 
 
 3
 On December 27, 1990, Sullivan laid off Robert Gooden, who was a union steward. The Union immediately filed a grievance on Gooden's behalf, alleging that Sullivan violated the collective bargaining agreement by discriminating against a union representative. After Sullivan denied the grievance, the Union brought the matter before a joint committee composed of members of the Associated General Contractors of America and the Union ("the Joint Committee"), as provided in the collective bargaining agreement. The Joint Committee unanimously directed that Gooden should be reinstated without back pay, but set out no opinion to accompany its decision. Sullivan refused to reinstate Gooden and filed suit in federal district court to vacate the decision of the Joint Committee.[1] The district court held that the Joint Committee exceeded the authority granted by the collective bargaining agreement and set aside the decision.
 
 II. DISCUSSION
 A. Judicial Review of a Labor Arbitration
 
 4
 Federal judicial review of the contractual mediation of a labor dispute is extremely narrow. This is due in part to the strong federal policy favoring the private and efficient resolution of labor disputes, as emphasized by the Supreme Court in the "Steelworkers Trilogy" cases.[2] Based upon this policy, arbitral awards enjoy a strong presumption of finality in the labor arena.
 
 
 5
 Finality benefits both sides; the employee obtains quick and inexpensive resolution of his claim and the employer is able to defuse the situation and thereby minimize labor unrest. In addition, the arbitrator has greater leeway to rely on his expertise in labor matters--and his sense about the true intent of the parties to the agreement--to reach a result that might well be more equitable and efficacious than that of a judge applying traditional rules of contract interpretation.
 
 
 6
 Wallace v. Civil Aeronautics Bd., 755 F.2d 861, 864 (11th Cir.1985). Narrow judicial review is also dictated by the contractual nature of arbitration. Having bargained for the arbitrator's interpretation of the collective bargaining agreement, the dissatisfied party has only the most limited recourse in federal court. See United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).
 
 
 7
 The substantive review of a labor arbitration award "is limited to a determination of whether an award is irrational, whether it fails to draw its essence from the collective bargaining agreement or whether it exceeds the scope of the arbitrator's authority." Butterkrust Bakeries v. Bakery, Confectionery and Tobacco Workers, 726 F.2d 698, 699 (11th Cir.1984). In the instant case, the district court set aside the award on the ground that the Joint Committee ignored the plain language of the collective bargaining agreement. We review de novo a district court's order to vacate an arbitration award. Robbins v. Day, 954 F.2d 679, 681 (11th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992).
 
 
 8
 In United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), the Supreme Court clarified the scope of a federal court's authority to set aside an arbitration award on the ground that the award fails to draw its essence from the collective bargaining agreement between the parties.
 
 
 9
 Courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.... The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.... [T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.
 
 
 10
 484 U.S. at 38, 108 S.Ct. at 370-71.
 
 
 11
 Sullivan contends that the Joint Committee disregarded the plain language of the collective bargaining agreement and, thus, the award was properly vacated on the ground that it failed to "draw its essence" from the contract. The PLA provides that "[l]ayoffs shall be determined solely by the contractor based upon his need for various skills and work requirements. Preferential treatment will not be given for any reason." R-11-Ex. 1-13. Sullivan argues that the Joint Committee disregarded this language and ordered Gooden reinstated based upon the customary practice that a union steward is laid off only after all other employees. The Joint Committee did not set out its rationale in an opinion. In the district court, Sullivan submitted affidavits from Joseph C. Hill and Charles Browning, Sullivan's vice-president and general superintendent. Both affiants were involved in the grievance process. The affidavits state that, although the grievance filed by the Union alleged that Sullivan had discriminated against Gooden based upon his union position, the Union's argument at the hearing was that Gooden should have been laid off last because he was the union steward. The affidavits state further that the Union presented evidence that Gooden had a satisfactory work record, but did not offer any evidence to show that Gooden was laid off because he was the union steward. Sullivan contends, and the district court concluded, that the Joint Committee based its decision solely upon the industry practice of steward "super seniority," according to which a union steward receives preferential treatment during layoffs, and that this rationale disregarded the plain language of the PLA reserving layoff decisions to Sullivan and prohibiting preferences of any sort.
 
 
 12
 B. The Joint Committee Decision was Improperly Vacated
 
 
 13
 "It is well settled that arbitrators are not required to explain an arbitration award and that their silence cannot be used to infer a grounds for vacating the award." Robbins, 954 F.2d at 684. See also O.R. Securities, Inc. v. Professional Planning Assocs., Inc., 857 F.2d 742, 747 (11th Cir.1988). In the field of commercial arbitration, a lump sum award is presumptively correct, and the contesting party must show that the arbitrators could not have relied upon any rational basis in determining the award. Robbins, 954 F.2d at 684; Schmidt v. Finberg, 942 F.2d 1571, 1574-75 (11th Cir.1991). Guided by Misco and the "Steelworkers Trilogy," we decline to apply any less deferential standard to a labor arbitration. Moreover, we perceive no reason to treat the Joint Committee's decision under a different framework than that applicable to a conventional arbitration panel. Sullivan must therefore refute every reasonable basis upon which the Joint Committee may have acted. See Robbins, 954 F.2d at 684; Schmidt, 942 F.2d at 1574.
 
 
 14
 By this standard, Sullivan has failed to demonstrate that the Joint Committee ignored the language of the collective bargaining agreement and failed to draw its award from the essence of the contract. Initially, even if Sullivan is correct that the Joint Committee based its decision upon the custom that union stewards are laid off last, we are not persuaded that the district court could properly vacate the award. The Joint Committee could have rationally determined that the PLA provision prohibiting preferential treatment in determining layoffs did not negate the custom protecting union stewards from layoffs. Such an interpretation could be viewed as consistent with the background labor law principles that guided the Joint Committee. Although section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3) ("NLRA"), forbids an employer to encourage union membership "by discrimination in regard to hire or tenure of employment or any term or condition of employment," the National Labor Relations Board ("NLRB") has determined that the practice of granting union stewards super seniority for the limited purpose of determining layoffs is consistent with this provision. Dairylea Cooperative, Inc., 219 N.L.R.B. 656, 658, 89 L.R.R.M. 1737 (1975), enf'd, NLRB v. Milk Drivers & Dairy Employees, Local 338, 531 F.2d 1162 (2d Cir.1976); Galindo v. Stoody Co., 793 F.2d 1502, 1515 n. 10 (9th Cir.1986). The NLRB reasons that a super seniority rule for union stewards operates primarily to ensure vigilant and consistent union representation for local workers and only incidentally as a preference benefiting the steward.
 
 
 15
 [I]t is well established that steward super seniority limited to layoff and recall is proper even though it, too, can be described as tying to some extent an on-the-job benefit to union status. The lawfulness of such restricted super seniority is, however, based on the ground that it furthers the effective administration of bargaining agreements on the plant level by encouraging the continued presence of the steward on the job. It thereby not only serves a legitimate statutory purpose but also redounds in its effects to the benefit of all unit employees. Thus super seniority for layoff and recall has a proper aim and such discrimination as it may create is simply an incidental side effect of a more general benefit accorded all employees.
 
 
 16
 Dairylea Cooperative, 219 N.L.R.B. at 658. Aware of the unique treatment and purpose of layoff preferences for union stewards, the Joint Committee may have considered this practice to be applicable under the collective bargaining agreement.
 
 
 17
 The provisions of the PLA would not render such a determination unreasonable. Although bound by the terms of the contract, the Joint Committee could use background principles of labor law, the past practices of the parties, and industry custom to interpret the agreement. "The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law--the practices of the industry and the shop--is equally a part of the collective bargaining agreement although not expressed in it." Warrior & Gulf Navigation, 363 U.S. at 581-82, 80 S.Ct. at 1352. Sullivan notes that the grievance procedures specified in the BCA and incorporated by the PLA limit the arbitrator's use of past practice "to situations where the contractual language is not clear." R-11-Ex.2-2. First, taken literally, this language applies only to the final stage of the grievance process, which calls for final resolution by an external arbitration panel if the Joint Committee fails to resolve the grievance. The Joint Committee could have concluded that this provision did not limit its authority to interpret the PLA. Second, the Joint Committee may have concluded that, given the customary treatment of steward super seniority, the failure to explicitly disavow this rule rendered the layoffs provision unclear, allowing the Joint Committee to draw upon principles of labor law and the past practice of the parties. As noted above, the NLRB has taken the position that steward super seniority may be reconciled with the anti-discrimination mandates of the NLRA because these seniority rules have the primary purpose of insuring stable union representation for project workers. This rationale is consistent with the provisions of the PLA granting the Union the right to maintain a steward on the construction site and stating that the intent of the agreement is "to provide close cooperation between management and labor." R-11-Ex. 1-3 & 6. Thus, without ignoring the language of the collective bargaining agreement, the Joint Committee could conclude that the PLA did not prohibit super seniority for the union steward because this practice inures primarily to the benefit of all employees and has not been treated as an individual preference under the background principles of labor law and the past practice of the parties.[3]
 
 
 18
 We need not agree with the interpretation of the PLA posited above. It is important only that we conclude that the award in favor of Gooden could draw its essence from the contract. Even a "serious error" in contract interpretation would not allow this court to vacate the Joint Committee's award since the Committee was at least "arguably construing or applying the contract and acting within the scope of [its] authority." Misco, 484 U.S. at 38, 108 S.Ct. at 371. It is, of course, possible that the Joint Committee flatly disregarded the layoffs provision in the PLA; no opinion records the Committee's rationale. Nevertheless, "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give the reasons for an award." Enterprise Wheel & Car Corp., 363 U.S. at 598, 80 S.Ct. at 1361.[4] Sullivan has thus not refuted "every rational basis upon which the arbitrator could have relied." Robbins, 954 F.2d at 684.
 
 
 19
 It is also possible that the Joint Committee reinstated Gooden because it concluded, as the Union alleged in its initial grievance, that Gooden was laid off because he was the union steward. Sullivan does not argue that such discrimination would be lawful under the PLA, but relies upon the affidavits submitted to the district court to show that the Joint Committee heard no evidence that Gooden's layoff was based upon his union status. It is not disputed, however, that Gooden was a union steward and that he was laid off while others who were not union stewards remained. Further, the Joint Committee heard evidence that Gooden had a satisfactory work record. Although we might consider such evidence to be insufficient to establish discrimination by Sullivan, even "improvident" or "silly" factfinding is "hardly a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts." Misco, 484 U.S. at 39, 108 S.Ct. at 371. Additionally, the Joint Committee may have concluded that the Union had presented a prima facie case of discrimination and that Sullivan had failed to rebut this showing by proffering or proving some nondiscriminatory rationale. An arbitrator's decision allocating the burden of proof among the parties or in fixing the legal framework for evaluation of a grievance ordinarily cannot be reviewed in federal court. See, e.g., Amalgamated Meat Cutters & Butcher Workmen, District Local No. 540 v. Neuhoff Bros. Packers, Inc., 481 F.2d 817, 818-19 (5th Cir.1973) (arbitrator did not fail to draw award from essence of contract by placing burden on employer to prove employee's theft beyond a reasonable doubt). The Joint Committee therefore could, without ignoring the language of the PLA, find that Gooden had proved that he was terminated because of his union position.
 
 
 20
 Finally, the Joint Committee may have found that the provision in the PLA reserving to Sullivan the sole right to determine layoffs "based upon his need for various skills and work requirements" acts in part as a restriction upon Sullivan's discretion in selecting employees for layoff. The Committee may have concluded that Sullivan had failed to show that Gooden was laid off based upon Sullivan's skill and work requirements and thus ordered reinstatement. This interpretation of the contract and the facts surrounding Gooden's layoff is not so unreasonable as to require the award to be vacated.
 
 
 21
 The Joint Committee could have rationally relied upon any of these factual and legal bases in reinstating Gooden. In the absence of a written opinion, we must sustain the award because Sullivan has not refuted "every rational basis upon which the arbitrator could have relied." Robbins, 954 F.2d at 684. It is also possible that the Joint Committee flatly disregarded the language of the collective bargaining agreement. So long as there is a reasonable basis to conclude that the Joint Committee may have drawn the award from the essence of the contract, however, we may not vacate the award. Enterprise Wheel, 363 U.S. at 598, 80 S.Ct. at 1361; Robbins, 954 F.2d at 684.
 
 
 22
 In support of the district court's vacatur of the award, Sullivan cites a number of precedents setting aside arbitration awards on the ground that the arbitration panel failed to draw its award from the essence of the contract. This circuit and others have vacated awards where the arbiter resolved issues that the parties did not contractually agree to submit to arbitration. This has commonly occurred where the collective bargaining agreement empowered the arbitrator to decide whether an employee was terminated or suspended for just cause, but prohibited the arbitrator from rendering any decision upon the proper disciplinary measures once just cause was determined.[5] In other cases vacating awards, the arbiter similarly reached beyond the scope of the issues contractually submitted by the parties for arbitration.[6] In this case, however, Sullivan does not complain that the Joint Committee resolved a dispute that had not been designated for arbitration in the contract, nor does it contend that the Committee resorted to some remedy beyond its delegated power. Sullivan must base its attack on its disagreement with the Joint Committee's interpretation of the layoffs provision. While we do not pretend that some absolute line divides cases where the arbiter has disregarded the contract from those where the arbiter merely interpreted the contract, this case does not involve such a departure from the terms of the collective bargaining agreement or the factual circumstances that the award must be vacated.
 
 
 23
 REVERSED.
 
 
 
 *
 Honorable Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation
 
 
 [1]
 In the district court, Sullivan alternatively sought an order compelling the Union to submit the grievance to formal arbitration. The collective bargaining agreement provides that a grievance that is not resolved by the Joint Committee must be submitted to final and binding arbitration. The Union refused to arbitrate, contending that the unanimous decision of the Joint Committee was a final resolution under the collective bargaining agreement. The district court did not grant Sullivan's motion to compel arbitration, and Sullivan has not appealed this issue
 
 
 [2]
 United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)
 
 
 [3]
 We find the decision of the Fifth Circuit in Folger Coffee, Co. v. International Union, U.A.W., Local 1805, 905 F.2d 108 (5th Cir.1990) to be instructive. The union filed a grievance challenging Folger's decision to subcontract out yard work to a professional landscaping company. The collective bargaining agreement reserved to the employer "the determination of the nature and extent of work, if any, to be contracted or transferred out." 905 F.2d at 109 n. 3. Despite this language, an arbitration panel ordered Folger to return the subcontracted work to the union. Relying on the provision in the collective bargaining agreement prohibiting the arbitration panel from amending or altering the agreement, Folger sought to vacate the award in the district court. The panel implied a duty to subcontract work in good faith and looked to the past practices of the parties to determine that union members had traditionally performed yard work of the sort contracted out by Folger. The Fifth Circuit refused to vacate the award; the arbitration panel did not ignore the provision of the collective bargaining agreement regarding subcontracting, but interpreted this provision in light of background principles of labor law and the past practices of the parties. "The strong lesson of Misco is that even though arbitrators arguably misunderstood the language [of the contract], that does not permit courts to vacate the arbitrator's determination." Id. at 112
 
 
 [4]
 See also Chicago Typographical Union v. Chicago Sun-Times, Inc., 935 F.2d 1501, 1505-06 (7th Cir.1991) (sustaining award where, although arbiter did not explain any reason that contrary contract provision would not govern dispute, possible interpretive route could justify decision)
 
 
 [5]
 See, e.g., Butterkrust Bakeries, 726 F.2d at 700. Accord Delta Queen Steamboat Co. v. District 2 Marine Engineers, 889 F.2d 599, 604 (5th Cir.1989), cert. denied, --- U.S. ----, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990); Container Products, Inc. v. United Steelworkers, 873 F.2d 818, 820 (5th Cir.1989)
 Under certain narrow circumstances, this court has also vacated the decision of an arbiter on the ground that the award is arbitrary and capricious. See Ainsworth v. Skurnick, 960 F.2d 939, 941 (11th Cir.1992). In Ainsworth, the arbitration panel found that a security broker was negligent in handling a customer's account. Despite the fact that such conduct clearly violated Fla.Stat. ch. 517.12, which triggers the mandatory damages provision under Fla.Stat. ch. 517.211, the panel declined to award damages. The panel opinion did not purport to find the mandatory damages provision inapplicable; further, there was no rational ground for disregarding this provision that could be inferred from the facts or legal background of the claim. We upheld the vacatur of the award on the basis that the panel's decision was arbitrary and capricious. 960 F.2d at 941. As developed above, however, in the instant case there are several rational bases upon which the Joint Committee could have reinstated Gooden. Because a ground for the Joint Committee's decision can be inferred from the facts of the case, vacatur under the arbitrary and capricious standard is not appropriate. Ainsworth, 960 F.2d at 941; Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 1410, 1413 (11th Cir.1990).
 
 
 [6]
 See, e.g., Bruno's, Inc. v. United Food & Commercial Workers, 858 F.2d 1529, 1532 (11th Cir.1988) (arbiter could not draft new shopping cart inspection policy where contract allocated such authority to employer); Howard P. Foley Co. v. International Broth. of Elec. Workers, 789 F.2d 1421, 1423-24 (9th Cir.1986) (absent collective bargaining provision empowering arbiter to award punitive damages, arbiter may not make punitive award)
 United Steelworkers v. USX Corp., 966 F.2d 1394 (11th Cir.1992) does not establish any broader principle of review. We reversed an injunction entered by the district court enforcing an arbitration award. Under the injunction, the union could enforce certain provisions of the collective bargaining agreement in a civil contempt proceeding. The injunction thus allowed the union to avoid arbitrating claims arising from the employer's contracting out certain work despite the fact that the contract clearly required such disputes to be submitted to arbitration. We reversed on the basis that the award, as enforced by injunction, would effectively rewrite the collective bargaining agreement. 966 F.2d at 1403.