**BUTTERKRUST BAKERIES,**
Plaintiff-Appellee,

v.

**BAKERY, CONFECTIONERY AND TO-BACCO WORKERS INTERNATIONAL UNION, AFL–CIO, LOCAL NO. 361, Defendants-Appellants.**

No. 82–3208.

United States Court of Appeals,
Eleventh Circuit.

March 9, 1984.

James B. Loper, Tampa, Fla., for defendants-appellants.

Richard Parker, Hoyt L. Dennard, Jr., John L. Lynch, Greenville, S.C., for plaintiff-appellee.

Before FAY and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

This is an appeal from a grant of summary judgment in a suit brought by Butterkrust Bakeries (Butterkrust) in the United States District Court for the Middle District of Florida in which Butterkrust successfully sought to vacate an arbitrator's decision requiring the reinstatement of one of its employees, Jason Woodard. After Butter-

krust succeeded in having the award set aside, the Bakery, Confectionery and Tobacco Workers International Union (Union) prosecuted this appeal on behalf of its member, Woodard. Finding that the district court was correct in its determination that the arbitrator's decision exceeded his permissible scope of authority, we affirm.

Jason Woodard was a long-time employee of the Butterkrust Bakeries with a history of disciplinary problems.[1] On November 5, 1981, he became embroiled in a heated dispute with a fellow employee for which he subsequently was discharged.[2] Pursuant to the terms of the collective bargaining agreement between Butterkrust and the Union in force at the time, the Union requested arbitration. In pertinent part, the agreement provided that Butterkrust was to retain sole control over employee discipline, record at 21, subject only to the condition that termination be for just cause. *Id.* at 20. It provided further that the arbitrator's decision was to be final and binding provided that it was within the scope of the agreement and did not modify any of its conditions or terms. *Id.* at 29.

Butterkrust agreed to arbitrate. Although variously worded, the issue submitted for decision was whether just cause existed for Woodard's discharge. After a hearing on the merits, the arbitrator concluded that "the incident of November 5, 1981, would not, in and of itself, constitute grounds for discharge . . . ." Record at 42. In a subsequent paragraph, however, the arbitrator modified this initial conclusion and found that the present incident, considered in light of Woodard's troubled disciplinary history, justified the termination. Rather than upholding the discharge though, the arbitrator determined that successful completion of a Dale Carnegie course would mitigate his finding of just

cause. Therefore he ordered Woodard to be reinstated upon completion of the course.

Butterkrust then filed this action to vacate this novel and rather confusing award on the ground that the arbitrator had no authority to reinstate Woodard once he found just cause for the discharge. The district court agreed with this argument and vacated the award.

■■■ Public policy favors arbitration as an alternative means of dispute resolution. *See United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Therefore, judicial review of arbitration awards is necessarily quite restricted. *See United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Substantive review of an award is limited to a determination of whether an award is irrational, whether it fails to draw its essence from the collective bargaining agreement or whether it exceeds the scope of the arbitrator's authority. *See Loveless v. Eastern Air Lines, Inc.,* 681 F.2d 1272, 1276 (11th Cir. 1982). Here, we must decide whether past events, such as an employee's disciplinary history, may be considered in evaluating whether there is cause for discharge, and, if so, whether future remedial events may be taken into account in mitigation of a present offense.

■■■ In resolving labor disputes, arbitrators are not bound by ordinary legal principles. "The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1417, 4 L.Ed.2d 1409, 1417 (1960). Thus arbitrators are ex-

---

1. Woodard's record indicates four past instances of misconduct, including a previous discharge for fighting. On that occasion, Woodard was reinstated at the Union's request.

2. The arbitrator found that the altercation was provoked by Woodard's belittling remarks to two sanitation employees after which Woodard

slapped the hand of one of the employees. The sanitation worker then "punched" Woodard in the face. At that point, Woodard "reached toward his pocket and said 'I'll cut your guts out'." Before any further violence erupted, Woodard was escorted from the room.

pected to apply both the "common law of the shop" and their own personal judgment when resolving labor disputes. Because arbitrators are accorded this great latitude in formulating their decisions, we hold that it was proper for the arbitrator here to consider Woodard's disciplinary history in evaluating whether there was just cause for the discharge.

This conclusion is in keeping with the terms of the collective bargaining agreement which state only that: "No employee shall be discharged without justifiable cause." Record at 20. The agreement does not specify that cause must derive from one isolated incident. Therefore, we find that it may arise instead from the cumulative effect of numerous past instances of misconduct. Although none of the previous incidents alone may have been sufficient to sustain a dismissal, the most recent occurrence may constitute the proverbial "last straw" finally warranting termination. *See* F. ELKOURI & E. ELKOURI, HOW ARBITRATION WORKS § 38–39 (3d ed. 1981). Therefore, although the arbitrator determined that the November 5th incident alone did not justify discharge, he remained free to consider the cumulative effect of Woodard's disciplinary history in making his adjudication of just cause.

Having found just cause for the dismissal, we must next address whether the arbitrator here had the authority to ameliorate that finding based upon the occurrence of a subsequent event such as completion of a Dale Carnegie course. After examining the specific facts of this case and the collective bargaining agreement in force between these parties, it is our considered opinion that the arbitrator's authority over the parties in this dispute ceased upon his determination of the existence of just cause for discharge. We reach this conclusion for two separate reasons.

■■■ The terms of the collective bargaining agreement provided that Butterkrust was to retain sole control over employee discipline. Therefore, the arbitrator

exceeded the scope of his authority by imposing a disciplinary sanction on Woodard. Additionally, the law is well-established that an arbitrator "can bind the parties only on issues that they have agreed to submit to him." *Piggly Wiggly v. Piggly Wiggly,* 611 F.2d 580, 583 (5th Cir.1980).[3] The issue submitted here was limited to whether there was just cause for Woodard's discharge. Therefore, once the arbitrator made a finding on this issue, his authority came to an end. *See Timken Co. v. United Steelworkers,* 482 F.2d 1012 (6th Cir.1973) (where agreement provided for discharge for unauthorized absence, held error for arbitrator to overturn otherwise valid discharge upon determination that phrase "unauthorized absence" did not contemplate situation where employee absent because incarcerated); *Magnavox Co. v. IUE,* 410 F.2d 388 (6th Cir.1969) (where collective bargaining agreement provided that company could discharge employee for refusal to work, once arbitrator found that employee had refused, arbitrator could not mitigate penalty); *Textile Workers Union v. American Thread Co.,* 291 F.2d 894 (4th Cir.1961) (where agreement allows for discharge upon showing of just cause, arbitrator erred in reducing discharge to one week suspension). But *cf. IAM v. Campbell Soup Co.,* 406 F.2d 1223 (7th Cir.), *cert. denied,* 396 U.S. 820, 90 S.Ct. 57, 24 L.Ed.2d 70 (1969) (arbitrator's nullification of a discharge upheld because agreement contained no language prohibiting arbitrator from "adding to" terms of agreement.) Therefore, because the collective bargaining agreement in this case reposed sole control over employee discipline in Butterkrust and expressly prohibited modification of its terms, once the arbitrator found the prerequisite for discharge to be present, his authority over the matter ceased. He had no power to reinstate Woodard under any condition.

Accordingly, the judgment of the district court is AFFIRMED.

3. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

TUTTLE, Senior Circuit Judge, dissenting:

With deference, I dissent. I do so because I believe the majority has overlooked the fact that the arbitrator incorrectly decided that Woodard's termination was justified by reason of conduct which the parties had not placed before the arbitrator for his determination.

The termination notice was in material part as follows:

Terminated based on the following facts:

(1) A fight did occur, which is a violation Plant Rule # 4;

(2) Abusive and provocative language was used, Rule # 13;

(3) A safety hazard existed due to emotions created by argument started & inflamed by Jason & threats, Rule # 17;

(4) Each employee's previous employment was considered;

(5) Jason was the aggressor, making the first bodily contact & starting the argument followed by threats.

The company's statement of the issue to be considered by the arbitrator was as follows:

[T]he issue in the case is, of course, generally the same: whether the company had justifiable cause for discharging the Grievant, Jason Woodard, *for violation of company rules,* including rules against fighting and use of abusive language. (emphasis added)

The company has contended both before the arbitrator and before the district court that the arbitrator had the power under this submission to find any "justifiable" cause. Thus the arbitrator found that the employee's past record was sufficiently bad to have justified company action of a disciplinary nature. This, of course, entirely overlooks the fact that the only issue presented by the company's submission was whether he had violated "company rules, including rules against fighting and the use of abusive language." The arbitrator was powerless to decide that anything other than a violation of company rules would justify the termination.

The company now outlines the series of acts of bad conduct by Woodard, as shown by his personnel record, but significantly, the arbitrator did not find that any one of these was a violation of company rules. Some of them apparently were arbitrated to the benefit of the employee and others may not have been. The record is not complete as to whether there was any final proof in any of these prior situations that Woodard had violated some company rule other than those that are expressly mentioned in his termination notice. Moreover, I am of the opinion that where the specific rules are stated and numbered in the termination notice and the company's statement of the issue before the arbitrator had the further language "including rules against fighting and the use of abusive language," the issue as presented was restricted to the question of the justification of termination based upon the conduct that occurred in the alleged violation of the numbered rules; that is, the occurrence of November 5, 1981.

If, as I would think we would all agree, the company is bound by its own statement of the issue presented to the arbitrator, then, everything he considered or required by his final decision other than his determination that the acts of November 5 did not justify termination because none of these stated rules had been violated would be nugatory.

While I agree that the conduct of Woodard on November 5 might well have been decided by the arbitrator to be a violation of one or several of the stated rules, he found that the rules had not been violated. That should have been the end of his decision. Since, however, Woodard did not complain of the requirement that he be certified as having satisfactorily passed the Dale Carnegie course then the fact that the arbitrator's decision to that effect should have been no part of his decision is unimportant at this stage of the proceeding.

I would reverse the decision of the trial court and reinstate the decision of the arbitrator.