**WIREGRASS METAL TRADES COUNCIL AFL–CIO,**
Plaintiff,

v.

**SHAW ENVIRONMENTAL & INFRASTRUCTURE, INC., Defendant.**

Case No. 1:13–CV–084–WKW WO.

United States District Court, M.D. Alabama, Southern Division.

Signed March 30, 2015.

Jesse Cecil Gardner, Thomas Matthew Loper, The Gardner Firm, P.C., Mobile, AL, for Plaintiff.

Jennifer Carin Burford, John Richard Carrigan, Ogletree, Deakins, Nash, Smoak & Stewart PC, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

W. KEITH WATKINS, Chief Judge.

Plaintiff Wiregrass Metal Trades Council AFL–CIO ("Wiregrass"), a workers' union within the meaning of the Labor Management Relations Act, filed suit on February 11, 2013, against Defendant Shaw Environmental & Infrastructure, Inc. ("Shaw") for breach of a collective bargaining agreement ("CBA"). On August 21, 2013, Wiregrass's motion to compel arbitration (Doc. # 2) was granted (Doc. # 17), and an arbitrator heard the matter on December 5, 2013. On March 14, 2014, the arbitrator submitted her decision to the parties, ruling in favor of Wiregrass, and three days later Wiregrass moved to dismiss the present litigation (Doc. # 24). Shaw opposed Wiregrass's motion to dismiss and moved to vacate the arbitrator's award. (Doc. # 26.) Upon referral (Doc. # 35), the Magistrate Judge recommended that Shaw's motion be granted and the arbitrator's award vacated (Doc. # 39). Both parties timely filed Objections to the Recommendation. (Docs. # 40, 41.) After careful consideration of the record, the parties' briefs, the applicable case law, and the Recommendation, the court finds that the Recommendation is due to be adopted, Shaw's motion (Doc. # 26) is due to be granted, and the arbitrator's award is due to be vacated.

## I. STANDARD OF REVIEW

■ The court reviews *de novo* "those portions of the . . . [R]ecommendation[ ] to which objection is made." 28 U.S.C. § 636(b)(1).

## II. DISCUSSION

### A. *Background*

Wiregrass alleges that Shaw breached the parties' CBA when it suspended and ultimately terminated Jack Endicott, a Shaw employee covered by the CBA. With its complaint, Wiregrass filed a motion for a preliminary injunction, which was construed as a motion to compel arbitration. Shaw opposed the motion, arguing that it had no contractual obligation to arbitrate Wiregrass's claims because Wiregrass failed to perform the preconditions necessary to bring the grievance into arbitration. After reviewing the arguments of counsel and relevant case law, the court granted Wiregrass's motion, and the arbitration process began.

The parties jointly selected an arbitrator, and an arbitration hearing was conducted on December 5, 2013. During the hearing, the arbitrator narrowed the dispute to two central inquiries: (1) Was the grievance procedure properly followed? and if so (2) Did Shaw have just cause to terminate Mr. Endicott? After a day of testimony, an examination of the controlling CBA, and a review of various exhibits, the arbitrator determined that Wiregrass had properly brought the grievance into arbitration and that Shaw did not have just cause to terminate Mr. Endicott.

While the arbitrator recognized that Wiregrass did not adhere strictly to the time lines provided in the detailed three-step procedure through which a grievance would trigger arbitration review, she highlighted that the CBA contained a modification provision. Specifically, the arbitrator cited Article 8, Section 3 of the CBA, which provides that the right to "change, alter, amend, modify, add to, or delete from [the CBA] is the sole prerogative of the contracting parties." (Doc. # 26, Ex. B, at 15.) Reviewing the communications that occurred between Wiregrass's president and Shaw's labor relations manager from the time of Mr. Endicott's suspension to the filing of the present lawsuit, the arbitrator determined that the parties chose to invoke Article 8, Section 3's modification procedure and suspended the ordinary grievance-procedure time lines in light of Mr. Endicott's government investigations, military police charges, and magistrate hearings. The arbitrator then determined that once Wiregrass discovered that all inquiries and investigations into Mr. Endicott's actions were complete, "it acted in good faith in requesting that the tabled grievance" be reopened and timely and appropriately moved the grievance through Step Two and Step Three and into arbitration. (Doc. # 26, Ex. B, at 16.)

Because the arbitrator determined that Wiregrass had properly invoked the modified procedures of the CBA to bring its grievance into arbitration, she turned to the second inquiry—whether Shaw had just cause to terminate Mr. Endicott. The arbitrator concluded that just cause required "that [Shaw] investigate before administering discipline and that the investigation be fair and reasonable." (Doc. # 26, Ex. B, at 17.) Applying this standard to the events leading to Mr. Endicott's termination, the arbitrator highlighted several perceived inadequacies in Shaw's conduct.

First, she noted that Shaw did not conduct its own investigation into Mr. Endicott's actions and, instead, relied entirely on the investigation of the military police. Second, the arbitrator found it significant that Shaw never gave Mr. Endicott the opportunity to tell his side of the story and ultimately terminated him based on charges that were ultimately thrown out by a magistrate judge. Finally, the arbitrator credited Mr. Endicott's testimony that he did not know the property in question was stolen and determined that Mr. Endicott could not "be said to have violated a policy prohibiting possession of government property when he did not know the property belonged to the government or that it had been stolen." (Doc. # 26, Ex. B, at 17.)

When considered cumulatively, these facts led the arbitrator to determine that Shaw did not prove by a preponderance of the evidence that it had just cause to terminate Mr. Endicott. Because the grievance was sustained, the arbitrator then turned to the crafting of a remedy. While all parties agreed that reinstatement would not be possible in light of the conclusion of Shaw's contract with the government and Mr. Endicott's present medical condition, the arbitrator concluded that

Mr. Endicott was entitled to be treated as though he were reinstated. Accordingly, the arbitrator awarded Mr. Endicott "back pay from the date of his termination to the date the successor company replaced Shaw as the service provider" on the government contract, "and all benefits including reimbursement for medical expenses not covered by other sources and COBRA coverage as though he were employed when Shaw lost its contract or was bought out." (Doc. # 26, Ex. B, at 17.)

Three days after the arbitrator issued her judgment in favor of Wiregrass and Mr. Endicott, Wiregrass moved to have the present case dismissed in light of the arbitrator's final and binding decision. (Doc. # 24.) Shaw opposed Wiregrass's motion and countered with a motion to vacate the arbitrator's award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10. (Doc. # 26.) Both motions were referred to a magistrate judge for recommendation pursuant to 28 U.S.C. § 636. (Doc. # 35.)

## B. *The Recommendation*

On December 8, 2014, the Magistrate Judge entered his Recommendation. Turning first to Shaw's motion to vacate, the Magistrate Judge delineated the motion into three primary inquiries: "(1) should the court or the arbitrator render a decision on whether [Wiregrass] satisfied the procedural prerequisites of the [CBA] ... to advance this dispute to arbitration; (2) did the arbitrator act within or exceed her authority when holding that [Shaw] lacked 'just cause' to terminate one of its employees for unauthorized possession of [g]overnment property; and (3) was the arbitrator authorized by the [CBA] to formulate and impose a remedy for violations" of the CBA? (Doc. # 39, at 1251, 1251.)

First addressing whether the arbitrator properly possessed the authority to render a decision on whether Wiregrass satisfied the CBA's grievance procedures, the Magistrate Judge recognized the similarities between Shaw's post-arbitration challenge and its initial arguments opposing Wiregrass's motion to compel arbitration. While Shaw's present contentions focused on specific perceived oversteps in the arbitrator's findings as to Step Three of the CBA's grievance procedures, rather than generally contesting jurisdiction, the Magistrate Judge reiterated the overarching principle that "[w]here there is an agreement to arbitrate, as here, procedural issues such as notice and timeliness are properly left to the arbitrator." (Doc. # 39, at 1255.) The Magistrate Judge then determined that it was within the arbitrator's authority to interpret the CBA, *including the provision allowing for modification,* and to review the parties' actions accordingly. In sum, the Magistrate Judge concluded that the arbitrator possessed and acted in conformity with her jurisdiction to decide matters of procedure.

Having concluded that the arbitrator's procedural determinations were within her jurisdiction, the Magistrate Judge next addressed Shaw's contention that the arbitrator impermissibly exceeded her authority when she determined that Shaw lacked just cause to terminate Mr. Endicott. The starting point for this portion of the Recommendation was the CBA, which specified that Shaw possessed, "within its sole discretion, 'just cause' to terminate an employee who is in unauthorized possession of [g]overnment property." (Doc. # 39, at 1255.) While the arbitrator quoted this portion of the CBA in her decision, the Magistrate Judge explained that the arbitrator failed to discuss the straightforward effects of the provision in light of her implicit finding that Mr. Endicott had in fact possessed stolen government property. Instead, the arbitrator proceeded to determine that Shaw lacked just cause to

terminate Mr. Endicott because (1) Shaw relied entirely upon the unconcluded investigation of the military police, and (2) Mr. Endicott did not know that the property in question was stolen government property.

In reviewing this determination, the Magistrate Judge highlighted that this was not a case in which the court—or a party—was offering its own *interpretation* of the CBA in lieu of that of the arbitrator's. Rather, this case presented a situation where the CBA vested exclusive disciplinary control with an employer over specifically delineated acts and the arbitrator found one of the predicate acts in question—Mr. Endicott's admitted possession of stolen government property. In light of circuit precedent and the CBA provision expressly prohibiting the arbitrator "from adding to, deleting, or modifying" its terms, the Magistrate Judge concluded that the arbitrator was bound to apply the express language of the CBA in accordance with her own factual findings. Accordingly, the Magistrate Judge found that the arbitrator acted beyond her authority when she concluded that Shaw did not have just cause to terminate Mr. Endicott. And because the arbitrator's just-cause determination was done in direct opposition to the plain language of the CBA, the Magistrate Judge recommended that the award be vacated under 9 U.S.C. § 10(a)(4).

Despite recommending that the arbitration award be vacated, the Magistrate Judge continued in his analysis and addressed Shaw's final contention—that the arbitrator acted outside her authority in awarding a remedy inconsistent with the CBA. The Magistrate Judge noted that the CBA specifically permitted arbitrator-crafted remedies and in such cases, "a court is not permitted to examine the factual basis or legality of the damages award." (Doc. # 39, at 1258.) Because the Magistrate Judge appropriately deter-

mined that the arbitration award was due to be vacated, however, additional review and analysis on the award's remedy is unnecessary.

## C. *The Objections*

Following the issuance of the Recommendation, both parties filed Objections (Docs. # 40, 41), and each party responded at length to the Objections of the opposing party (Docs. # 42, 43).

### 1. *Wiregrass's Objection*

Wiregrass objects to the Magistrate Judge's recommendation that the arbitration award be vacated and argues that the arbitrator was well within her authority when she determined that Shaw lacked just cause to terminate Mr. Endicott. Specifically, Wiregrass asserts that each of the arbitrator's two reasons for finding a lack of just cause—Shaw's failure to perform an independent investigation and Mr. Endicott's lack of knowledge regarding the status of the property—provides a sufficient and appropriate basis to uphold the arbitrator's award. Moreover, Wiregrass takes issue with the Magistrate Judge's determination that the arbitrator was not *interpreting* the CBA when she incorporated an implicit *mens rea* element into the CBA's list of offenses that constitute just cause.

Wielding case law and public policy's strong deference for the contractual interpretations of arbitrators, Wiregrass notes that "the Supreme Court has interpreted laws to include an element of *mens rea* . . . even when the text itself includes no such word." (Doc. # 40, at 5) (emphasis omitted). Incorporating a prerequisite of knowledge, Wiregrass argues that the Supreme Court was not ignoring the plain language of the law, but was interpreting the law. It argues that the same sort of interpretation formed the basis for the ar-

bitrator's determination that Mr. Endicott did not actually do the thing prohibited under the CBA—*knowingly* possess government property. By second guessing the determination of the arbitrator, Wiregrass argues that Shaw is merely seeking to escape the terms of the CBA in favor of a more favorable forum.

### 2. *Shaw's Objection*

Shaw did not object to the ultimate recommendation of the Magistrate Judge, but does object to two of the Magistrate Judge's underlying findings. Specifically, Shaw contends that the Magistrate Judge erred when he determined that the arbitrator did not exceed her authority when she (1) concluded that Wiregrass had properly brought the grievance into arbitration, and (2) awarded damages for a period of time in which Mr. Endicott's health prohibited him from working. Because the Magistrate Judge's recommendation that the arbitration award be vacated is due to be adopted, Shaw's objection as to the appropriateness of the remedy is moot and will not be addressed.

### D. *Analysis*

██ Wiregrass is correct in its assertion that arbitrators are to be afforded great deference in the interpretation of collective bargaining agreements. As the Supreme Court explained in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*:

> The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.

363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). However, as the Magistrate Judge recognized, "the law is well-established that an arbitrator 'can bind the parties only on issues that they have agreed to submit to him.'" *Butterkrust Bakeries v. Bakery, Confectionery & Tobacco Workers Int'l Union, AFL–CIO, Local No. 361*, 726 F.2d 698, 700 (11th Cir.1984) (quoting *Piggly Wiggly v. Piggly Wiggly*, 611 F.2d 580, 583 (5th Cir.1980)).[1] And while "[a] court generally must defer to an arbitrator's findings of fact[,]" once the facts are found, "an arbitrator may not ignore the plain language of the contract." *Warrior v. Gulf Nav. Co. v. United Steelworkers of Am., AFL–CIO–CLC*, 996 F.2d 279, 280–81 (11th Cir.1993) (internal citations and quotations omitted).

The same principle that forms the foundation for the great deference enjoyed by arbitrators in their contractual interpretations—that agreements entered into between consenting parties be upheld and given full force by courts—mandates that the present award be vacated. The parties likely engaged in time-consuming, adversarial negotiations to ultimately arrive at the mutually agreeable CBA, and it is true, and Shaw concedes, that the CBA contains a provision whereby grievances may be submitted for binding arbitration. However, the same CBA from which the arbitrator arrived at her jurisdiction, expressly limited the scope of her authority. Specifically, Article 8, Section 3 of the CBA provides that an arbitrator "shall have the authority to interpret and apply the provisions of [the CBA][,]" but that the "arbitrator shall not have the authority to change, alter, amend, modify, add to, or delete from [the CBA]." (Doc. # 26–1, at 94.)

1. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 2981.

While the parties expressly bargained for an arbitrator to be given the authority to interpret and apply the CBA and ultimately issue final and binding determinations, they did so with the understanding that the arbitrator would not "change, alter, amend, modify" or add to the other provisions bargained for in the CBA. And as the Magistrate Judge properly recognized, "[i]t is an unobjectionable principle that an employer can bargain to have included in a collective bargaining agreement a provision to the effect that certain identified types of employee conduct always provide just cause for discharge." *IMC–Agrico Co. v. Int'l Chem. Workers Council of the United Food & Commercial Workers Union, AFL–CIO,* 171 F.3d 1322, 1327 (11th Cir.1999) (citations omitted). Here, the CBA contained just such a provision, whereby both parties agreed that the *"possessing,* taking, removing, using, destroying, or tampering with Company or Government property without proper authority" would constitute just cause for termination. (Doc. # 26–1, at 92.) Wiregrass could have negotiated "knowingly" possessing into the contract, but did not. The arbitrator exceeded her authority by adding it to the CBA.

Because the arbitrator implicitly found that Mr. Endicott possessed the government property without authorization, she implicitly made a finding of just cause. *See Butterkrust Bakeries,* 726 F.2d at 700 ("[B]ecause the collective bargaining agreement in this case reposed sole control over employee discipline in [the employer] and expressly prohibited modification of its terms, once the arbitrator found the prerequisite for discharge to be present, his authority over the matter ceased."). While Wiregrass argues that the arbitrator's adding of a knowledge requirement to the possession offense was merely an act of interpretation akin to the Supreme Court's interpretation of a law criminalizing the possession of an unregis-

tered machine gun, such an analogy is attenuated and fails to recognize the important differences between bargained for agreements and laws proscribing criminal behavior. In contract law, parties of equal stature are presumed to negotiate their own interests; indeed, labor unions are especially competent in this realm. Were this court to accept the implicit addition of a knowledge requirement, it would effectively render the CBA's limitation on the arbitrator's ability "to change, alter, amend, modify, add to, or delete from" the CBA meaningless. (Doc. # 26–1, at 94.)

In conclusion, the Magistrate Judge appropriately determined that the arbitrator exceeded her authority when she added a knowledge requirement to the CBA's delineation of offenses constituting just cause. Accordingly, Wiregrass's Objection (Doc. # 40) is due to be overruled and the arbitrator's award vacated.

As to Shaw's limited objection to the Magistrate Judge's determination that the arbitrator did not exceed her authority when she concluded that Wiregrass had properly brought the grievance into arbitration, Shaw has failed to show how the arbitrator lacked the requisite authority to make a determination on timeliness. Unlike the preceding analysis in which it was determined that the arbitrator exceeded her authority when she modified the terms of the CBA by adding a *mens rea* requirement, here she determined that the parties, through various communications over the course of several months, chose to invoke the provision of the CBA that specifically allowed for party-driven modification, to adjust the grievance procedure time line. The Magistrate Judge properly determined that such a determination was within the authority of the arbitrator and was not to be second guessed. Accordingly, Shaw's limited Objection (Doc. # 41) is also due to be overruled.

## III. CONCLUSION

Based upon an independent and *de novo* review of the Recommendation to which both parties objected, it is ORDERED as follows:

1. Wiregrass Metal Trades Counsel, AFL–CIO's Objection (Doc. # 40) is OVERRULED;

2. Shaw Environmental & Infrastructure, Inc.'s Objection (Doc. # 41) is OVERRULED;

3. The Recommendation of the Magistrate Judge (Doc. # 39) is ADOPTED;

4. Wiregrass Metal Trades Counsel, AFL–CIO's Motion to Dismiss (Doc. # 24) is DENIED; and

5. Shaw Environmental & Infrastructure, Inc.'s Motion to Vacate Arbitrator's Award (Doc. # 26) is GRANTED.

A separate final judgment will be entered

### *REPORT AND RECOMMENDATION*

PAUL W. GREENE, United States Magistrate Judge.

This matter is before the court on two motions: a motion to dismiss this lawsuit, without prejudice, in light of the arbitrator's final and binding decision filed by Plaintiff Wiregrass Metal Trades Council A.F.L.-C.I.O. ("the Union") (Doc. 24); and a motion to vacate the arbitrator's award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, by Defendant Shaw Environmental & Infrastructure, Inc. (Doc. 26). Because the award cannot be confirmed if it is vacated, Defendant's motion is addressed first. There are three issues presented by Defendant's motion to vacate the arbitrator's award: (1) should the court or the arbitrator render a decision on whether the Union satisfied the procedural prerequisites of the collective bargaining agreement between the parties to advance this dispute to arbitration; (2) did the arbitrator act within or exceed her authority when holding that Defendant lacked "just cause" to terminate one of its employees for unauthorized possession of Government property; and (3) was the arbitrator authorized by the collective bargaining agreement to formulate and impose a remedy for violations of the contract?

Upon consideration, the Magistrate Judge **RECOMMENDS** that Defendant's motion to vacate the arbitrator's award is due to be **GRANTED** and that the Union's motion to dismiss, without prejudice, is due to be **DENIED**.

## I. BACKGROUND AND FACTS

The parties generally agree on the underlying facts of this case.[1] (Doc. 30 at p. 1). Defendant terminated Mr. Jack Endicott's employment in 2010. The arbitrator determined that, in 2006, another of Defendant's employees placed a plasma cutter[2] in Mr. Endicott's home garage or tool shed. It remained there for some time until Mr. Endicott grew weary of storing it, and he gave the tool to an auto parts store to satisfy his outstanding bill. Years later, Defendant learned that the plasma cutter Mr. Endicott gave away was Government property and that it was removed from Defendant's work site at Fort Rucker, Alabama, where Mr. Endicott was employed. Defendant notified the military police, who investigated the circumstances

---

1. Unless otherwise noted, the "facts" and procedural background are derived from the arbitrator's written decision and this court's previous memorandum opinion and order compelling arbitration. (Doc. 17 and Doc. 26–2). No findings of fact are made herein as to the underlying grievance that precipitated the Union seeking arbitration.

2. *Nota bene:* A plasma cutter is a tool used to cut steel and other metals of varying thickness.

of how the Government's plasma cutter came to be at an auto parts store.

During the investigation, Mr. Endicott was arrested and charged with theft of Government property. He was acquitted of that charge on a motion at trial. (Doc. 261 at pp. 188–220). Once charges were brought against Mr. Endicott, but before he was acquitted, Defendant terminated his employment. Defendant imposed that level of discipline because it determined that Mr. Endicott possessed Government property without proper authorization, which is a terminable offense for "just cause" pursuant to the express terms of the collective bargaining agreement. The Union protested his termination. When it did not reach a satisfactory resolution with the Defendant, the Union filed this lawsuit to compel Defendant to arbitrate their dispute in accordance with the Union's interpretation of a collective bargaining agreement between the parties.

Defendant concedes that the collective bargaining agreement contains a provision for binding arbitration. Since before this litigation began, however, Defendant has asserted that it is not bound to arbitrate the matter of Mr. Endicott's termination from employment.

In its opposition to the Union's motion to compel arbitration, Defendant argued that it was not required to arbitrate the parties' dispute because, in its opinion, the Union did not comply with the requisite grievance resolution procedure of the collective bargaining agreement. (Doc. 16, pp. 3–5). The grievance resolution procedure is a three-step process that sets out the parties rights and responsibilities. (Doc. 17 at pp. 2–3).[3] First, an aggrieved employee must notify his steward, who will then inform the Union, of a complaint,

dispute, or grievance. The Union is vested with sole authority to judge the validity of a complaint and whether it will attempt to resolve the employee's issue. As part of Step One, the Union undertakes resolution efforts with one of Defendant's project managers. If a mutually agreeable outcome is not reached, the Union must issue a written, formal referral of the matter to Defendant, specifically the Labor Relations Manager or his designee, within ten days of the failed efforts to resolve the issue between the Union and the project manager. That written referral advances the dispute to "Step Two" of the grievance process.

At Step Two, the Union and the Defendant's designee are required to "meet in an effort to settle the grievance." (Doc. 17 at p. 3). "If no satisfactory settlement is arrived at within five (5) days, the Union may within five (5) additional days, refer the matter to Step Three, Arbitration." (*Id.*). A grievance must proceed through Step One and Step Two to be eligible for arbitration. "The arbitrator shall consider only the issues raised in Step Two .... [and the] decision of the arbitrator shall be final and binding upon both parties." (*Id.*). After failing to reach a resolution at Step Two, the Union sought an order from this court compelling arbitration and for a preliminary injunction.

In opposition to the Union's motion for a preliminary injunction and to compel arbitration, Defendant specifically argued that the Union was procedurally barred from moving the grievance to arbitration because it had not referred the matter to Step Two. The district judge held that "because it is the role of the arbitrator, and not the Court, to decide procedural issues that arise out of an arbitrable dis-

---

**3.** The district judge originally assigned to this case set out a verbatim recitation of the grievance procedure in a Memorandum Opinion and Order of August 21, 2013. (Doc. 17).

Because resolution of the motions at bar involve the grievance procedure, it is summarized herein to provide context.

pute, including timeliness and credibility issues that affect or relate to timeliness, the Court finds that the Union's motion has merit and is due to be granted." (Doc. 17 at p. 8). The district court ordered the parties to arbitrate their dispute.

The issues presented to the arbitrator were: (1) "Was the grievance procedure followed? If not, what is the remedy?"; and (2) "Whether [Defendant] had just cause to terminate [Mr. Endicott]? If not, what is the remedy?" (Doc. 26–2 at p. 4). An arbitration hearing was held on December 5, 2013, and a certified transcript of that hearing is in the court's record. On March 14, 2014, the arbitrator issued a nineteen page written decision in which she held that the Union properly advanced the dispute through the grievance procedure to arbitration, found that Defendant lacked just cause to terminate Mr. Endicott, and awarded him monetary damages.

Defendant contests each of those findings.

## II. STANDARD OF REVIEW AND LEGAL PRINCIPLES

■ Judicial review of an arbitration award is "narrowly limited," *Lifecare International, Inc. v. CD Medical, Inc.*, 68 F.3d 429, 433 (11th Cir.1995) (citing *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1190 (11th Cir.1995)), and "necessarily quite constricted." *Butterkrust Bakeries v. Bakery, Confectionery and Tobacco Workers International Union, AFL–CIO, Local No. 361*, 726 F.2d 698, 699 (11th Cir.1984) (internal citation omitted). A party contesting an arbitration award faces a "difficult standard" to overcome as an arbitration award "is presumptively correct." *Lifecare International, Inc.*, 68 F.3d at 435. The FAA presumes the confirmation

of arbitration awards and federal courts should defer to the arbitrator's decision whenever possible.[4] *See Lifecare International, Inc.*, 68 F.3d at 433 (citing *Robbins v. Day*, 954 F.2d 679, 682 (11th Cir.1992), rejected on other grounds by *Davis*, 59 F.3d at 1188 (rejecting the abuse of discretion standard of appellate review of arbitration awards and adopting a *de novo* standard)).

The statutory basis for vacatur or modification of an arbitrator's award are set forth in the FAA; 9 U.S.C. §§ 10 and 11 "respectively provide the FAA's exclusive grounds for expedited vacatur and modification[.]" *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1322 (11th Cir.2010) (quoting *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 587, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) (internal marks omitted)). Contractual provisions that expand on the FAA and "judicially created bases for vacatur are no longer valid in light of *Hall Street*." *Frazier*, 604 F.3d at 1324.

Defendant asserts that the arbitrator's award is due to be vacated pursuant to § 10(a)(4) of the FAA. That code section provides that a court "may make an order vacating the award … where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

■ In arbitrations that are conducted pursuant to a collective bargaining agreement, "the law is well-established that an arbitrator 'can bind the parties only on issues that they have agreed to submit to him.'" *Butterkrust Bakeries*, 726 F.2d at 700 (quoting *Piggly Wiggly v. Piggly Wiggly*, 611 F.2d 580, 583 (5th Cir.1980)).[5]

---

4. The Union concedes that, for purposes of this litigation, the FAA and its accompanying body of case law are binding. (Doc. 30 at p. 3).

5. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding prece-

A court generally must defer to an arbitrator's findings of fact. *United Paperworkers Int'l. Union v. Misco, Inc.*, 484 U.S. 29, 37–38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). Once those facts are found, however, an arbitrator "may not ignore the plain language of the contract." *Misco*, 484 U.S. at 38, 108 S.Ct. at 371. "... [A]n arbitrator does not have unfettered discretion. He may not impose a remedy which directly contradicts the express language of the collective bargaining agreement." *Bruno's, Inc. v. United Food and Com. Wkrs. Int'l.*, 858 F.2d 1529, 1531 (11th Cir.1988).

*Warrior & Gulf Nav. Co. v. United Steelworkers of America, AFL–CIO–CLC*, 996 F.2d 279, 280–81 (11th Cir.1993) (bracketed text in original).

■ "In resolving labor disputes, arbitrators are not bound by ordinary legal principles ... [and are afforded] great latitude in formulating their decisions[.]" *Id.* at 699–700.

"The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1417 [1352], 4 L.Ed.2d 1409, 1417 (1960). Thus arbitrators are expected to apply both the "common law of the shop" and their own personal judgment when resolving labor disputes.
*Id.*

■ However, "while an arbitrator's decision is accorded considerable judicial deference to the extent it touches the merits of the controversy, his jurisdiction nevertheless is shaped by the underlying collective bargaining agreement." *Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Association, AFL–CIO*, 889 F.2d 599, 602 (5th Cir.1989) (citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). "[F]ederal courts are free to scrutinize the award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement." *Id.* (citations omitted). An arbitrator

may look beyond the written contract when interpreting a collective bargaining agreement if the instrument is ambiguous or silent upon a precise question. *Manville Forest Prods. Corp. v. United Paperworkers Int'l Union*, 831 F.2d 72, 75 (5th Cir.1987). However, where the arbitrator exceeds the express limitations of his contractual mandate, judicial deference is at an end.

*Delta Queen*, 889 F.2d at 602.

"Where an arbitrator exceeds his contractual authority, vacation ... of the award is an appropriate remedy." *Id.* (citations omitted).

## III. DISCUSSION

### A. Decisions Regarding Procedural Matters Rest with the Arbitrator

In its brief in support of the motion to vacate, Defendant argues that the arbitrator exceeded her authority when finding that the Union properly advanced the dispute through the grievance procedure. In making that contention, Defendant once again raises the argument that the Union did not properly advance the grievance from Step One to Step Two. That argument is similar to and derivative of the argument Defendant previously asserted and the district judge ruled was a proce-

---

dent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

dural matter for the arbitrator to decide in the August 21, 2013, Memorandum Opinion and Order. That ruling will not be revisited or disturbed. The question of whether the Union properly proceeded from Step Two to Step Three, which is raised by Defendant in the instant motion, is likewise procedural and was within the purview of the arbitrator to decide.

■ Where there is an agreement to arbitrate, as here, procedural issues such as notice and timeliness are properly left to the arbitrator. *See John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1107 (11th Cir.2004). The parties contracted for the arbitrator to resolve those issues. "[G]reat deference" is afforded to "an arbitrator's interpretation of a collective bargaining agreement ... [and it is not a court's] role to review the merits of the arbitrator's interpretation, but only to ask whether it was arguably based on the language of the agreement." *IMC–Agrico Co. v. International Chemical Workers Council of the United Food and Commercial Workers Union, AFL–CIO,* 171 F.3d 1322, 1326 (11th Cir.1999) (citing *United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. 1358 ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.")).

■ The arbitrator heard evidence and arguments from both parties and determined that the Union complied with the notice and timeliness procedures of the grievance procedure. Here, there is at least an arguable basis for the arbitrator's holding that the Union properly navigated the grievance procedure of the collective bargaining agreement based on the evidence before the arbitrator and her findings of fact that Defendant received notice at each "step" and that Defendant was, in part, the cause of and agreed to the delays in the grievance resolution process. The arbitrator found that, within the scope of the parties' authority under the collective bargaining agreement, the parties acted in conformity with or agreed to modify the grievance procedure through their conduct and actions. Defendant has not shown that the arbitrator lacked jurisdiction to make those findings.

### B. The Arbitrator Impermissibly Exceeded Her Authority by Holding that Defendant Lacked Just Cause to Terminate Mr. Endicott's Employment.

Defendant asserts that the arbitrator overstepped the authority and jurisdiction conferred upon her under the collective bargaining agreement by holding that there was not just cause for Mr. Endicott's termination. The relevant issue the parties agreed to arbitrate was limited to whether Defendant had just cause to terminate Mr. Endicott.

The agreement specifies that Defendant has, within its sole discretion, "just cause" to terminate an employee who is in unauthorized possession of Government property.[6] (Doc. 26–2 at p. 6). Mr. Endicott was terminated for unauthorized possession of Government property, *i.e.,* the plasma cutter. That Mr. Endicott possessed the plasma cutter and that he was not authorized to do so were not in dispute at arbi-

---

6. The arbitrator quoted the relevant language of the collective bargaining agreement in her written decision.

tration. Crucially, the arbitrator implicitly and expressly made factual findings that Mr. Endicott possessed the plasma cutter, the plasma cutter belonged to the Government, and Mr. Endicott did not have authorization to have the tool in his possession. The arbitrator noted that, at the time Defendant terminated Mr. Endicott, it relied on the following, in relevant part, in support of its decision: (1) a plasma cutter found at the auto parts store at issue belonged to the Government; (2) that same plasma cutter bore an identification number that matched a number assigned to a plasma cutter that was missing from Mr. Endicott's place of work; (3) Mr. Endicott gave that plasma cutter to the auto parts store; (4) Mr. Endicott admitted to the military police that the plasma cutter did not belong to him; and (5) Mr. Endicott told the military police that he possessed the plasma cutter before giving it to the auto parts store. (Doc. 26–2 at p. 15).

After acknowledging those facts and the controlling language of the collective bargaining agreement regarding just cause, the arbitrator offered no analysis or discussion about the effect of her findings of those facts in light of the material terms of the agreement. Instead, she held that Defendant did not have just cause to terminate Mr. Endicott's employment for two reasons. First, the arbitrator determined that, for purposes of the dispute over Mr. Endicott's termination, "[j]ust cause requires that the Company investigate before administering discipline and that the investigation be fair and reasonable." (Doc. 26–2 at p. 18). She concluded that Defendant's reliance on the investigation by the military police and Defendant's failure to make an independent investigation or to allow Mr. Endicott an opportunity to respond to the allegations of wrongdoing made against him obviated a finding of just cause. (Doc. 26–2 at pp. 17–18). Second, the arbitrator held that Defendant lacked just cause because Mr. Endicott did not "know" the plasma cutter was Government property at the time it was in his possession. (Doc. 26–2 at p. 18). Specifically, the arbitrator stated that Mr. Endicott "cannot be said to have violated a policy prohibiting possession of [G]overnment property when he did not know the property belonged to the [G]overnment...." (Doc. 26–2 at p. 18).

Defendant argues that, in light of the arbitrator's finding that Mr. Endicott possessed the Government's plasma cutter without authorization, the arbitrator was bound to enforce the terms of the collective bargaining agreement with respect to the contract's provision that the offense of unauthorized possession of Government property is a terminable offense for just cause at Defendant's sole discretion. The Union counters that the arbitrator was entitled to and did apply her own judgment and the industrial common law when holding that Defendant lacked just cause. Despite the broad latitude courts grant to arbitrators, their findings of fact, and their interpretation of collective bargaining agreements, this case presents the exceptional circumstance of an arbitrator exceeding her authority by failing to enforce and modifying the express, unambiguous terms of the collective bargaining agreement. *See, e.g., Delta Queen, supra.*

■ "It is an unobjectionable principle that an employer can bargain to have included in a collective bargaining agreement a provision to the effect that certain identified types of employee conduct always provide just cause for discharge." *IMC–Agrico Co.,* 171 F.3d at 1327 (citations omitted). The collective bargaining agreement in this case has such a provision: *i.e.,* that unauthorized possession of Government property is a terminable offense for just cause at the Defendant's unilateral discretion. "[O]nce an arbitra-

tor implicitly finds that the employee engaged in conduct that is defined by a bargaining agreement to be an offense subjecting him to discharge, then that is an implicit finding of just cause and the arbitrator's task is finished." *IMC–Agrico Co.*, 171 F.3d at 1327 (citing *Delta Queen,* 889 F.2d at 604 ("If a collective bargaining agreement defines 'proper cause' to include a nonexhaustive list of offenses, an arbitrator cannot ignore the natural consequences of his finding that a listed offense was committed.")); *see also Butterkrust Bakeries,* 726 F.2d at 700 ("[B]ecause the collective bargaining agreement in this case reposed sole control over employee discipline in Butterkrust and expressly prohibited modification of its terms, once the arbitrator found the prerequisite for discharge to be present, his authority over the matter ceased."); *Bruno's, Inc. v. United Food & Commercial Workers International Union,* 858 F.2d 1529 (11th Cir.1988) (vacating, in part, an arbitrator's decision that was contrary to the discretionary authority of an employer under a collective bargaining agreement).

■ This case presents a situation where a collective bargaining agreement vests disciplinary control exclusively with Defendant, expressly prohibits an arbitrator from adding to, deleting, or modifying the terms of the agreement, and involves a finding by the arbitrator of the predicate act to termination—Mr. Endicott's unauthorized possession of the Government's plasma cutter. Upon that factual finding, the arbitrator had no other course to follow under the terms of the collective bargaining agreement but to render a finding of just cause for the termination and to hold in favor of the Defendant. *See Warrior Gulf & Navigation Co.,* 996 F.2d at 281 (When a collective bargaining agreement contains a provision that conduct of a certain type allows an employer discretion to discharge the employee, once an arbitrator makes a finding of fact that impli-

cates that provision, then the terms of the agreement require an arbitrator "to uphold management's decision."). Her jurisdiction terminated such that her additional opinions and analysis on the issue of just cause constitute an impermissible departure from and modification of the collective bargaining agreement. *See Butterkrust,* 726 F.2d at 700 (an arbitrator exceeds her authority when she overturns an otherwise valid discharge on the basis of situations not contemplated in the collective bargaining agreement, *i.e.,* a discharge for unauthorized absence cannot be overturned because the agreement does not contemplate that the absence might be caused because of incarceration) (citing and summarizing the holding of *Timken Co. v. United Steelworkers,* 482 F.2d 1012 (6th Cir.1973)); *Delta Queen, supra* (an arbitrator cannot ignore unambiguous language in a collective bargaining agreement and loses her jurisdiction when she does so).

This is not a situation where the arbitrator's *interpretation* of the collective bargaining agreement is different from this court's nor is the court substituting its own judgment for that of the arbitrator. In reaching her decision on the just cause issue, the arbitrator impermissibly ignored the express language of the collective bargaining agreement. *See United Paperworkers International,* 484 U.S. at 38, 108 S.Ct. 364 ("The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.") (citation omitted).

There is no evidence that the arbitrator misread the contract or gave meaning to a provision that was subject to more than one interpretation. *See, e.g., IMC–Agrico Co.,* 171 F.3d at 1328 ("When there are two plausible interpretations of an agreement,

then the arbitrator's choice of one over the other will be honored.") (citation omitted). Misreading and ignoring a contract's terms are entirely different. The Union has not argued that the provision at issue is subject to more than one interpretation; rather, it urges the conclusion that the arbitrator must have made an interpretation of the agreement to reach her holding without explaining how or why. *See United Paperworkers International*, 484 U.S. at 38, 108 S.Ct. 364 ("[T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.").

Because the arbitrator exceeded her authority under the collective bargaining agreement when holding that the Defendant lacked just cause to terminate Mr. Endicott's termination, vacating the award is an appropriate remedy under 9 U.S.C. § 10(a)(4).

## C. The Arbitrator is Vested with Authority to Craft Remedies

After the arbitrator held that Defendant violated the terms of the collective bargaining agreement because Defendant lacked just cause to terminate Mr. Endicott's employment, the arbitrator awarded Mr. Endicott monetary damages. The Defendant asserts that the arbitrator committed errors of fact and law in her damages award and that the award is due to be vacated. In light of the recommendation herein that the arbitrator impermissibly exceeded her authority when reaching her just cause determination against Defendant, the arbitrator's award of damages is due to be vacated.

However, assuming *arguendo* that the arbitrator was correct and that she acted within her jurisdiction in rendering her just cause finding, the arbitrator's award of damages should not be disturbed. "[W]here it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *United Paperworkers International*, 484 U.S. at 38, 108 S.Ct. 364. The collective bargaining agreement permits an arbitrator to craft and impose remedies. There is nothing in the record to support a finding that the arbitrator acted outside the scope of her authority by awarding damages. A court is not permitted to examine the factual basis or legality of the damages award, as the Defendant urges, and is only authorized to look to the collective bargaining agreement to determine whether it is contemplated therein that the parties agreed to allow an arbitrator to craft a remedy. *See id.* That requirement is satisfied.

## IV. CONCLUSION AND RECOMMENDATION

Based upon the record and for the reasons discussed herein, the Magistrate Judge **RECOMMENDS** that Defendant's motion to vacate the arbitrator's award (Doc. 26) is due to be **GRANTED** and the Union's motion to dismiss (Doc. 24) is due to be **DENIED**.

The court has discretion under the FAA, 9 U.S.C. § 10, to vacate an arbitration award and to refer the matter to arbitration for further proceedings. On the record and in light of the arbitrator's material findings of fact, which are not disturbed herein, vacating the award and referring the matter to arbitration for further proceedings would unnecessarily prolong this litigation and a final resolution of the dispute, would cause the parties to expend

additional time and money, and would run contrary to the interests of judicial economy. The parties do not dispute that Mr. Endicott was in unauthorized possession of Government property and the arbitrator noted that undisputed fact in her written decision. The collective bargaining agreement, as discussed herein, conferred the Defendant with unilateral discretion and express just cause to terminate his employment for that offense. As such, there are no material facts in dispute or issues of contractual interpretation for an arbitrator to decide—the arbitrator already made the critical findings of fact to mandate the conclusion that the termination was for just cause. As such, returning this matter to arbitration for further proceedings would be a needless and costly exercise.

Pursuant to 9 U.S.C. § 10(a)(4), the arbitration award is due to be **VACATED** to the extent that the arbitrator held Defendant lacked just cause to terminate Mr. Endicott's employment. Consequently, because the liability determination against Defendant was beyond the arbitrator's jurisdiction, her award of damages is likewise due to be **VACATED.**

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **December 22, 2014.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report

accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982).

**DONE** and **ORDERED** this 8th day of December, 2014.